# KNICKERBOCKER ICE COMPANY *v.* STEWART.

ERROR TO THE SUPREME COURT, APPELLATE DIVISION, THIRD
JUDICIAL DEPARTMENT, OF THE STATE OF NEW YORK.

No. 543. Argued December 16, 1919.—Decided May 17, 1920.

The Constitution, Art. III, § 2, Art. I, § 8, itself adopted and estab-
lished, as part of the laws of the United States, approved rules of
the general maritime law, and empowered Congress to legislate in
respect of them and other matters within the admiralty and mari-
time jurisdiction. P. 160.

It took from the States all power, by legislation or judicial decision,
to contravene the essential purposes of, or work material injury to,
characteristic features of that law, or to interfere with its proper
harmony and uniformity in its international and interstate relations.
*Id.*

To preserve adequate harmony and appropriate uniform rules relating
to maritime matters and bring them within the control of the Federal
Government, was the fundamental purpose; and to such definite end
Congress was empowered to legislate within that sphere. *Id.*

There is a distinction between the situation created by the Constitu-
tion relative to maritime affairs and the one resulting from the mere
grant of power to regulate commerce without more. P. 161.

That clause of the provision granting otherwise exclusive admiralty
and maritime jurisdiction to the federal courts (Judiciary Act,
1789, § 9; Jud. Code, §§ 24, 256), which saves to suitors "in all
cases, the right of a common-law remedy, where the common law is
competent to give it," refers to remedies for enforcement of the
federal maritime law, and does not create substantive rights or
assent to their creation by the States. Pp. 159, 161.

The usual function of a saving clause is to preserve something from
immediate interference—not to create. P. 162.

The legislature does not alter the law by expressing an erroneous opinion
of it. *Id.*

Read with the explanatory report in the Senate and with the light of
attendant circumstances, the Act of October 6, 1917, c. 97, 40 Stat.
395, which purports to amend Jud. Code, §§ 24 and 256, by adding
to the saving clause "and to claimants the rights and remedies under
the workmen's compensation law of any State," is to be construed

as intending to obviate the objections pointed out in *Southern Pacific Co.* v. *Jensen*, 244 U. S. 205, and as seeking to authorize and sanction action by the States in prescribing and enforcing, as to all parties concerned, rights, liabilities and remedies designed to provide compensation for injuries suffered by employees engaged in maritime work. Pp. 161, *et seq.*

The attempted amendment is unconstitutional, as being a delegation of the legislative power of Congress and as defeating the purpose of the Constitution respecting the harmony and uniformity of the maritime law. P. 164. *The Hamilton*, 207 U. S. 398, distinguished. P. 166.

226 N. Y. 302, reversed.

THE case is stated in the opinion.

*Mr. Frank R. Savidge,* with whom *Mr. Frederick M. Thompson* was on the briefs, for plaintiff in error:

Congress has power to amend or create the maritime law which shall prevail throughout the country (*Butler* v. *Boston & Savannah S. S. Co.*, 130 U. S. 527; *In re Garnett,* 141 U. S. 1, 14), but that is the limit of its power. It cannot delegate this power to the States, nor authorize the enactment of laws that will destroy the uniformity of the maritime law. *The Lottawanna,* 21 Wall. 558; *Sudden & Christenson* v. *Industrial Accident Comm.*, 188 Pac. Rep. 803.

From what was said in *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205, it follows that if the new and revolutionary principle of compensation, involving the creation of a liability without fault, hitherto unknown in any system of law, is to be extended to maritime employments, this must be done by a law enacted by Congress establishing a uniform system throughout the country.

And, as stated in the opinion, "the absence of any law of Congress on the subject is equivalent to its declaration that commerce in that matter shall be free."

The New York workmen's compensation law, as applied to maritime employments, is also unconstitutional in that an essential part of the law bars rights of action in

admiralty, which cannot be barred by legislation of the States. Employers, upon complying with the law, are given complete immunity from suits to recover for disabilities sustained by their workmen in the course of the employment. The exclusiveness of the law is a most vital feature. *Jensen* v. *Southern Pacific Co.*, 215 N. Y. 514.

The whole scheme of the law fails in maritime employments. Compensation is only given by the law if other remedies are barred. If they cannot be barred in admiralty, an anomalous situation exists. The law would be not only enforced but enlarged far beyond the point that any state legislature has attempted to carry the compensation principle. It is not the intent, nor is it the effect of the New York law to give compensation in cases where other liability exists. To hold that the law is constitutional in maritime cases, amends the New York law. It is impossible to enforce it in maritime matters as it stands.

Another view is that expressed in *The Howell*, 257 Fed. Rep. 578, that the remedy is not interfered with, but the underlying cause of action is eliminated, and the remedy becomes inoperative. In view of the great weight of authority the other way, we do not believe that this court will adopt that view.

But one or the other position must eventually be taken. Either the State of New York, and all other States, must be allowed to make this inroad upon the maritime law, or their compensation acts must be held not to apply to maritime employments and to that extent to be invalid and unconstitutional.

That a middle course should be adopted by a construction which would amend the New York law by allowing compensation where the law itself does not give it, namely, in cases where other remedies are not barred, is unthinkable.

*Mr. E. Clarence Aiken,* Deputy Attorney General of the State of New York, with whom *Mr. Charles D. Newton,* Attorney General of the State of New York, was on the brief, for defendant in error:

The Constitution is in effect a mere form or skeleton of government, or a body not instinct with life until made so by congressional legislation. *McCulloch* v. *Maryland,* 4 Wheat. 316, 407; *Rhode Island* v. *Massachusetts,* 12 Pet. 657, 721. That this is true of the admiralty jurisdiction appears from the manner in which it has expanded in this country from what it was in England before and at the time of the Revolution, and from the opinions of this court touching the power of Congress over it. *New Jersey Steam Nav. Co.* v. *Merchants' Bank,* 6 How. 344; *The Thomas Jefferson,* 10 Wheat. 428; *The Orleans* v. *Phœbus,* 11 Pet. 175; *The Genesee Chief,* 12 How. 443; *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205 (dissenting opinion); *Chelentis* v. *Luckenbach S. S. Co.,* 247 U. S. 372; *Martin* v. *Hunter's Lessee,* 1 Wheat. 326; *United States* v. *Bevans,* 3 Wheat. 336.

That Congress has authority to define and limit jurisdiction in admiralty cases would seem to follow from its power with reference to other cases. Art. III, § 2, cl. 1, says that judicial power shall extend to controversies between citizens of different States, but Congress can confine the actual exercise by prescribing a jurisdictional amount. *Holt* v. *Indiana Mfg. Co.,* 176 U. S. 68; *United States* v. *Sayward,* 160 U. S. 493.

Even before the amendment to the section of the Judicial Code, this court in the *Jensen Case* pointed out the difficulty, if not impossibility, of defining "with exactness just how far the general maritime law may be changed, modified or affected by state legislation. That this may be done to some extent cannot be denied." It then refers to enforcement of liens upon vessels for repairs and the right given by state statutes to recover in death cases.

To this may be added the cases cited in the *Minnesota Rate Cases*, 230 U. S. 352, at p. 403 *et seq.*, involving state regulation of pilotage, harbor, bay and river improvements, bridges, wharfage charges and vessel quarantine. It also appears in earlier cases that States have, with the permission of Congress, exclusive jurisdiction over crimes committed on navigable waters within their boundaries, *United States* v. *Bevans*, 3 Wheat. 336; *People* v. *Welch*, 141 N. Y. 266; complete power to protect fisheries, *Manchester* v. *Massachusetts*, 139 U. S. 240, oyster beds, *McCready* v. *Virginia*, 94 U. S. 391, and sponges, *The Abby Dodge*, 223 U. S. 166, in public waters of the United States. And since the decision in the *Minnesota Rate Cases* this court has sustained the power of a State to compel a railroad doing business as an interstate carrier by land and by water to pay its employees semi-monthly. *Erie R. R. Co.* v. *Williams*, 233 U. S. 685.

So as to harbor improvements, *County of Mobile* v. *Kimball*, 102 U. S. 691, 697; improvements and obstructions to navigation, *Huse* v. *Glover*, 119 U. S. 543, 548; *Leovy* v. *United States*, 177 U. S. 621, 625; *Cummings* v. *Chicago*, 188 U. S. 410, 427; inspection and quarantine laws, *Gibbons* v. *Ogden*, 9 Wheat. 1, 203; wharfage charges, *Packet Co.* v. *Keokuk*, 95 U. S. 80; *Packet Co.* v. *Catlettsburg*, 105 U. S. 559, 563; *Transportation Co.* v. *Parkersburg*, 107 U. S. 691, 702; *Ouachita Packet Co.* v. *Aiken*, 121 U. S. 444, 447; tolls for the use of an improved waterway, *Sands* v. *Manistee River Imp. Co.*, 123 U. S. 288, 295.

So of provisions fixing the tolls for transportation upon an interstate ferry, *Port Richmond Ferry Co.* v. *Hudson County*, 234 U. S. 317, 331; or upon vessels plying between two ports located within the same State, *Wilmington Transportation Co.* v. *California Railroad Commission*, 236 U. S. 151, 156. See *Clark Distilling Co.* v. *Western Maryland Ry. Co.*, 242 U. S. 311.

It has been held by this court that the exception

"saving to suitors, in all cases, the right of common-law remedy, where the common law is competent to give it," did not mean necessarily a common-law action but that the remedy might be any means employed to enforce the rights or redress the injury. *Knapp, Stout & Co. v. Mc-Caffrey*, 177 U. S. 638, 644.

Rights of action as well as remedies have been created by the different States involving maritime torts which the admiralty law has adopted, and enforcement thereof has been had either in admiralty or the state courts, *e. g.*, a right of action for death. *Dougan v. Champlain Transportation Co.*, 56 N. Y. 1; *Steamboat Co. v. Chase*, 16 Wall. 522; *Sherlock v. Alling*, 93 U. S. 99; *The Hamilton*, 207 U. S. 398.

It appears to be settled, therefore, that the State may create a right and remedy in addition to a common-law or admiralty remedy, which may be pursued in the courts of the State. The State of New York has created a right and remedy by means of workmen's compensation, which were not known to the common law or the law of admiralty and cannot be enforced in either of those courts.

We suggest that if Congress had the power to save the right to proceed at common law under the Federal Government, it had also the right to allow procedure under some other form of remedy. That did not take away the jurisdiction of the admiralty courts or impair their jurisdiction, but allowed another remedy to be used in case one was not efficacious. We can see no difference between the power of Congress to save a common-law remedy and one for compensation.

All that was necessary to decide in the *Lottawanna Case* was whether there was an implied lien for necessaries furnished to a vessel in the home port, where no such lien was recognized by the municipal law of the State, and as to whether on that issue the case of *The General Smith*, 4 Wheat. 438, should be overruled. While paragraphs may

be picked out to support the contention for a law operating uniformly in the whole country, there are other expressions which recognize the undoubted power of Congress to introduce such changes as are likely to be needed.

However, with reference to the uniformity of admiralty and maritime law, there is really no question here. Congress is not attempting to disturb it. Whenever a case is brought in an admiralty court, the admiralty law will be enforced, the same in one State as in another; but wherever there is another remedy by way of workmen's compensation or a common-law remedy, such remedies will be asserted and enforced in their respective jurisdictions according to the law there prevailing. So far as the common-law remedy is concerned, it cannot be claimed that that is the same the country over.

We may assume that there is more nearly a uniformity under the compensation laws which have now been passed by forty-two States than there would be under the common-law procedure.

*Mr. Mark Ash,* by leave of court, filed a brief as *amicus curiæ.*

*Mr. Warren H. Pillsbury,* by leave of court, filed a brief as *amicus curiæ.*

MR. JUSTICE MCREYNOLDS delivered the opinion of the court.

While employed by Knickerbocker Ice Company as bargeman and doing work of a maritime nature, William M. Stewart fell into the Hudson River and drowned— August 3, 1918. His widow, defendant in error, claimed under the Workmen's Compensation Law of New York; the Industrial Commission granted an award against the Company for her and the minor children; and both Ap-

pellate Division and the Court of Appeals approved it.
226 N. Y. 302. The latter concluded that the reasons
which constrained us to hold the Compensation Law in-
applicable to an employee engaged in maritime work—
*Southern Pacific Co.* v. *Jensen,* 244 U. S. 205—had been
extinguished by "An Act To amend sections twenty-four
and two hundred and fifty-six of the Judicial Code, re-
lating to the jurisdiction of the district courts, so as to
save to claimants the rights and remedies under the
workmen's compensation law of any State," approved
October 6, 1917, c. 97, 40 Stat. 395.

The provision of § 9, Judiciary Act, 1789 (c. 20, 1 Stat.
76), granting to United States District Courts, "exclusive
original cognizance of all civil causes of admiralty and
maritime jurisdiction . . . , saving to suitors, in all
cases, the right of a common-law remedy, where the com-
mon law is competent to give it," was carried into the
Revised Statutes—§§ 563 and 711—and thence into the
Judicial Code—clause 3, §§ 24 and 256. The saving
clause remained unchanged until the statute of October 6,
1917, added "*and to claimants the rights and remedies
under the workmen's compensation law of any State.*" [1]

---

[1] Judiciary Act, September 24, 1789, c. 20, 1 Stat. 73, 76, 77:

Sec. 9. That the district courts shall have, exclusively of the courts
of the several States . . . exclusive original. cognizance of all
civil causes of admiralty and maritime jurisdiction, including all
seizures under laws of impost, navigation or trade of the United States,
where the seizures are made, on waters which are navigable from the
sea by vessels of ten or more tons burthen, within their respective
districts as well as upon the high seas; saving to suitors, in all cases,
the right of a common-law remedy, where the common law is competent
to give it; . . .

Rev. Stats. Sec. 563. The district courts shall have jurisdiction as
follows: . . .

Eighth. Of all civil causes of admiralty and maritime jurisdiction;
saving to suitors in all cases the right of a common-law remedy, where
the common law is competent to give it; and of all seizures on land and

In *Southern Pacific Co.* v. *Jensen* (May, 1917), 244 U. S.
205, we declared that under § 2, Article III, of the Con-
stitution ("The judicial power shall extend to . . .
all cases of admiralty and maritime jurisdiction") and
§ 8, Article I (Congress may make necessary and proper
laws for carrying out granted powers), "in the absence
of some controlling statute the general maritime law as
accepted by the federal courts constitutes part of our

on waters not within admiralty and maritime jurisdiction. And such
jurisdiction shall be exclusive, except in the particular cases where
jurisdiction of such causes and seizures is given to the circuit courts.
And shall have original and exclusive cognizance of all prizes brought
into the United States, except as provided in paragraph six of section
six hundred and twenty-nine.

Rev. Stats. Sec. 711. The jurisdiction vested in the courts of the
United States in the cases and proceedings hereinafter mentioned, shall
be exclusive of the courts of the several States:   . . .

Third. Of all civil causes of admiralty and maritime jurisdiction;
saving to suitors, in all cases, the right of a common-law remedy, where
the common law is competent to give it.

The Judicial Code—

Sec. 24. The district courts shall have original jurisdiction as fol-
lows:   . . .

Third. Of all civil causes of admiralty and maritime jurisdiction,
saving to suitors in all cases the right of a common-law remedy where
the common law is competent to give it;   . . .

Sec. 256. The jurisdiction vested in the courts of the United States
in the cases and proceedings hereinafter mentioned, shall be exclusive
of the courts of the several States:   . . .

Third. Of all civil causes of admiralty and maritime jurisdiction;
saving to suitors, in all cases, the right of a common-law remedy;
where the common law is competent to give it.

Act October 6, 1917, c. 97, 40 Stat. 395.

That clause three of section twenty-four of the Judicial Code is
hereby amended to read as follows:

"Third. Of all civil causes of admiralty and maritime jurisdiction,
saving to suitors in all cases the right of a common-law remedy where
the common law is competent to give it, and to claimants the rights and
remedies under the workmen's compensation law of any State; of all
seizures on land or waters not within admiralty and maritime jurisdic-

national law applicable to the matters within admiralty and maritime jurisdiction"; also that "Congress has paramount power to fix and determine the maritime law which shall prevail throughout the country." And we held that, when applied to maritime injuries, the New York Workmen's Compensation Law conflicts with the rules adopted by the Constitution and to that extent is invalid. "The necessary consequence would be destruction of the very uniformity in respect of maritime matters which the Constitution was designed to establish; and freedom, of navigation between the States and with foreign countries would be seriously hampered and impeded."

We also pointed out that the saving clause taken from the original Judiciary Act had no application, since, at most, it only specified common-law remedies, whereas the remedy prescribed by the compensation law was unknown to the common law and incapable of enforcement by the ordinary processes of any court. Moreover, if applied to maritime affairs, the statute would obstruct the policy of Congress to encourage investments in ships.

In *Chelentis* v. *Luckenbach S. S. Co.* (June, 1918), 247 U. S. 372, an action at law seeking full indemnity for injuries received by a sailor while on shipboard, we said: "Under the doctrine approved in *Southern Pacific Co.* v. *Jensen,* no State has power to abolish the well recognized maritime rule concerning measure of recovery and substitute therefor the full indemnity rule of the common law. Such substitution would distinctly and definitely

---

tion; of all prizes brought into the United States; and of all proceedings for the condemnation of property taken as prize."

Sec. 2. That clause three of section two hundred and fifty-six of the Judicial Code is hereby amended to read as follows:

"Third. Of all civil causes of admiralty and maritime jurisdiction, saving to suitors in all cases the right of a common-law remedy where the common law is competent to give it, and to claimants the rights and remedies under the workmen's compensation law of any State."

change or add to the settled maritime law; and it would be destructive of the 'uniformity and consistency at which the Constitution aimed on all subjects of a commercial character affecting the intercourse of the States with each other or with foreign states.'" And, concerning the clause, "saving to suitors in all cases the right of a common-law remedy where the common law is competent to give it," this: "In *Southern Pacific Co.* v. *Jensen,* we definitely ruled that it gave no authority to the several States to enact legislation which would work 'material prejudice to the characteristic features of the general maritime law or interfere with the proper harmony and uniformity of that law in its international and interstate relations.'" "Under the saving clause a right sanctioned by the maritime law may be enforced through any appropriate remedy recognized at common law; but we find nothing therein which reveals an intention to give the complaining party an election to determine whether the defendant's liability shall be measured by common-law standards rather than those of the maritime law." Thus we distinctly approved the view that the original saving clause conferred no substantive rights and did not authorize the States so to do. It referred only to remedies and to the extent specified permitted continued enforcement by the state courts of rights and obligations founded on maritime law.

In *Union Fish Co.* v. *Erickson,* 248 U. S. 308, an admiralty cause, a master sought to recover damages for breach of an oral contract with the owner of a vessel for services to be performed principally upon the sea. The latter claimed invalidity of the contract under a statute of California, where made, because not in writing and not to be performed within a year. We ruled: "The Circuit Court of Appeals correctly held that this contract was maritime in its nature and an action in admiralty thereon for its breach could not be defeated by the statute of

California relied upon by the petitioner." "In entering into this contract the parties contemplated no services in California. They were making an engagement for the services of the master of the vessel, the duties to be performed in the waters of Alaska, mainly upon the sea. The maritime law controlled in this respect, and was not subject to limitation because the particular engagement happened to be made in California. The parties must be presumed to have had in contemplation the system of maritime law under which it was made." See also *The Blackheath*, 195 U. S. 361, 365.

As the plain result of these recent opinions and the earlier cases upon which they are based, we accept the following doctrine: The Constitution itself adopted and established, as part of the laws of the United States, approved rules of the general maritime law and empowered Congress to legislate in respect of them and other matters within the admiralty and maritime jurisdiction. Moreover, it took from the States all power, by legislation or judicial decision, to contravene the essential purposes of, or to work material injury to, characteristic features of such law or to interfere with its proper harmony and uniformity in its international and interstate relations. To preserve adequate harmony and appropriate uniform rules relating to maritime matters and bring them within control of the Federal Government was the fundamental purpose; and to such definite end Congress was empowered to legislate within that sphere.

Since the beginning, federal courts have recognized and applied the rules and principles of maritime law as something distinct from laws of the several States—not derived from or dependent on their will. The foundation of the right to do this, the purpose for which it was granted, and the nature of the system so administered, were distinctly pointed out long ago. "That we have a maritime law of our own, operative throughout the United States, cannot

be doubted.  . . .  One thing, however, is unquestionable; the Constitution must have referred to a system of law coextensive with, and operating uniformly in, the whole country.  It certainly could not have been the intention to place the rules and limits of maritime law under the disposal and regulation of the several States, as that would have defeated the uniformity and consistency at which the Constitution aimed on all subjects of a commercial character affecting the intercourse of the States with each other or with foreign states." *The Loitawanna*, 21 Wall. 558, 574, 575.  The field was not left unoccupied; the Constitution itself adopted the rules concerning rights and liabilities applicable therein; and certainly these are not less paramount than they would have been if enacted by Congress.  Unless this be true it is quite impossible to account for a multitude of adjudications by the admiralty courts.  See *Workman* v. *New York City*, 179 U. S. 552, 557, *et seq.*

The distinction between the indicated situation created by the Constitution relative to maritime affairs and the one resulting from the mere grant of power to regulate commerce without more, should not be forgotten.  Also, it should be noted that federal laws are constantly applied in state courts—unless inhibited their duty so requires. Constitution, Article VI, clause 2; *Second Employers' Liability Cases*, 223 U. S. 1, 55.  Consequently mere reservation of partially concurrent cognizance to such courts by an act of Congress conferring an otherwise exclusive jurisdiction upon national courts, could not create substantive rights or obligations or indicate assent to their creation by the States.

When considered with former decisions of this court, a satisfactory interpretation of the Act of October 6, 1917, is difficult, perhaps impossible.  *The Howell*, 257 Fed. Rep. 578, and *Rhode* v. *Grant Smith Porter Co.*, 259 Fed. Rep. 304, illustrate some of the uncertainties.  In the

first, the District Court in New York dismissed a libel, holding that rights and remedies prescribed by the Compensation Law of that State are exclusive and *pro tanto* supersede the maritime law. In the second, the District Court of Oregon ruled that when an employee seeks redress for a maritime tort by an admiralty court, rights, obligations and liabilities of the respective parties must be measured by the maritime law and these cannot be barred, enlarged or taken away by state legislation. Other difficulties hang upon the unexplained words "workmen's compensation law of *any* state."

Moreover, the act only undertook to add certain specified rights and remedies to a saving clause within a code section conferring jurisdiction. We have held that before the amendment and irrespective of that section, such rights and remedies did not apply to maritime torts because they were inconsistent with paramount federal law—within that field they had no existence. Were the added words therefore wholly ineffective? The usual function of a saving clause is to preserve something from immediate interference—not to create; and the rule is that expression by the legislature of an erroneous opinion concerning the law does not alter it. Endlich, Interpretation of Statutes, § 372.

Neither branch of Congress devoted much debate to the act under consideration—altogether, less than two pages of the Record (65th Cong., pp. 7605, 7843). The Judiciary Committee of the House made no report; but a brief one by the Senate Judiciary Committee, copied below,[1]

---

[1] 65th Cong., 1st sess. Senate Report No. 139. Amending the Judicial Code. October 2, 1917.—Ordered to be printed. Mr. Ashurst, from the Committee on the Judiciary, submitted the following Report. [To accompany S. 2916.]

The Committee on the Judiciary, to which was referred the bill (S. 2916) to amend sections 24 and 256 of the Judicial Code, relating to the jurisdiction of the district courts, so as to save to claimants

probably indicates the general legislative purpose. And, with this and accompanying circumstances, the words must be read.

Having regard to all these things, we conclude that Congress undertook .to permit application of Workmen's Compensation Laws of the several States to injuries within the admiralty and maritime jurisdiction; and to save such statutes from the objections pointed out by *Southern Pacific Co.* v. *Jensen.* It sought to authorize and sanction action by the States in prescribing and enforcing, as to all parties concerned, rights, obligations, liabilities

the rights and remedies under the workmen's compensation law of any State, having considered the same, recommend its passage without amendment.

The Judicial Code, by sections 24 and 256, confers exclusive jurisdiction on the district courts of the United States of all civil cases of admiralty and maritime jurisdiction, "saving to suitors in all cases the right of a common-law remedy where the common law is competent to give it." It was declared by the Supreme Court of the United States in the case of *Southern Pacific Co.* v. *Jensen* that "the remedy which the compensation statute attempts to give is of a character wholly unknown to the common law, incapable of enforcement by the ordinary processes of any court and is not saved to suitors from the grant of exclusive jurisdiction." The bill (S. 2916) proposes only to amend the Judicial Code by so enlarging the saving clause as to include the rights and remedies under the compensation law of any State. Inasmuch as not only the remedy but sometimes the right under the compensation plan is unknown to the common law, both rights and remedies are included in the bill. The bill if enacted will not disrupt the admiralty jurisdiction of the Federal courts. The most that can be said of it will be that it is a recognition by Congress that a concurrent jurisdiction, State and Federal, should exist over certain matters. Actions that were formerly triable in admiralty courts will still be triable there. Where the cases were formerly triable only in such courts it will now be possible for the State, through its compensation plan, to determine the rights of the parties concerned. In other words, there being concurrent jurisdiction, the injured party, or his dependents, may bring an action in admiralty or submit a claim under the compensation plan.

and remedies designed to provide compensation for injuries suffered by employees engaged in maritime work.

And so construed, we think the enactment is beyond the power of Congress. Its power to legislate concerning rights and liabilities within the maritime jurisdiction and remedies for their enforcement, arises from the Constitution, as above indicated. The definite object of the grant was to commit direct control to the Federal Government; to relieve maritime commerce from unnecessary burdens and disadvantages incident to discordant legislation; and to establish, so far as practicable, harmonious and uniform rules applicable throughout every part of the Union.

Considering the fundamental purpose in view and the definite end for which such rules were accepted, we must conclude that in their characteristic features and essential international and interstate relations, the latter may not be repealed, amended or changed except by legislation which embodies both the will and deliberate judgment of Congress. The subject was intrusted to it to be dealt with according to its discretion—not for delegation to others. To say that because Congress could have enacted a compensation act applicable to maritime injuries, it could authorize the States to do so as they might desire, is false reasoning. Moreover, such an authorization would inevitably destroy the harmony and uniformity which the Constitution not only contemplated but actually established—it would defeat the very purpose of the grant. See *Sudden & Christenson* v. *Industrial Accident Commission*, 188 Pac. Rep. 803.

Congress cannot transfer its legislative power to the States—by nature this is non-delegable. *In re Rahrer;* 140 U. S. 545, 560; *Field* v. *Clark*, 143 U. S. 649, 692; *Butt-field* v. *Stranahan*, 192 U. S. 470, 496; *Butte City Water Co.* v. *Baker*, 196 U. S. 119, 126; *Interstate Commerce Commission* v. *Goodrich Transit Co.*, 224 U. S. 194, 214.

In *Clark Distilling Co.* v. *Western Md. Ry. Co.*, 242 U.

S. 311, notwithstanding the contention that it violated the Constitution—Article I, § 8, clause 3—this court sustained an act of Congress which prohibited the shipment of intoxicating liquors from one State into another when intended for use contrary to the latter's laws. Among other things, it was there stated that "the argument as to delegation to the States rests upon a mere misconception. It is true the regulation which the Webb-Kenyon Act contains permits state prohibitions to apply to movements of liquor from one State into another, but the will which causes the prohibitions to be applicable is that of Congress," i. e., Congress itself forbade shipments of a designated character. And further: "the exceptional nature of the subject here regulated is the basis upon which the exceptional power exerted must rest," i. e., different considerations would apply to innocuous articles of commerce.

The reasoning of that opinion proceeded upon the postulate that because of the peculiar nature of intoxicants which gives enlarged power concerning them, Congress might go so far as entirely to prohibit their transportation in interstate commerce. The statute did less. "We can see no reason for saying that although Congress in view of the nature and character of intoxicants had a power to forbid their movement in interstate commerce, it had not the authority to so deal with the subject as to establish a regulation (which is what was done by the Webb-Kenyon Law) making it impossible for one State to violate the prohibitions of the laws of another through the channels of interstate commerce. Indeed, we can see no escape from the conclusion that if we accepted the proposition urged, we would be obliged to announce the contradiction in terms that because Congress had exerted a regulation lesser in power than it was authorized to exert, therefore its action was void for excess of power." See *Delamater* v. *South Dakota*, 205 U. S. 93, 97.

Here, we are concerned with a wholly different constitutional provision—one which, for the purpose of securing harmony and uniformity, prescribes a set of rules, empowers Congress to legislate to that end, and prohibits material interference by the States. Obviously, if every State may freely declare the rights and liabilities incident to maritime employment, there will at once arise the confusion and uncertainty which framers of the Constitution both foresaw and undertook to prevent.

In *The Hamilton,* 207 U. S. 398, an admiralty proceeding, effect was given, as against a ship registered in Delaware, to a statute of that State which permitted recovery by an ordinary action for fatal injuries, and the power of a State to supplement the maritime law to that extent was recognized. But here the state enactment prescribes exclusive rights and liabilities, undertakes to secure their observance by heavy penalties and onerous conditions, and provides novel remedies incapable of enforcement by an admiralty court. See *New York Central R. R. Co.* v. *White,* 243 U. S. 188; *New York Central R. R. Co.* v. *Winfield,* 244 U. S. 147; *Southern Pacific Co.* v. *Jensen, supra.* The doctrine of *The Hamilton* may not be extended to such a situation.

The judgment of the court below must be reversed and the cause remanded with directions to take further proceedings not inconsistent with this opinion.

*Reversed and remanded.*

MR. JUSTICE HOLMES, dissenting.

In *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205, the question was whether there was anything in the Constitution or laws of the United States to prevent a State from imposing upon an employer a limited but absolute liability for the death of an employee upon a gang-plank between a vessel and a wharf, which the State unques-

149.    HOLMES, PITNEY, BRANDEIS and CLARKE, JJ., dissenting.

tionably could have imposed had the death occurred on the wharf.  A majority of the Court held the State's attempt invalid, and thereupon, by an Act of October 6, 1917, c. 97, 40 Stat. 395, Congress tried to meet the effect of the decision by amending § 24, cl. 3, and § 256, cl. 3, of the Judicial Code; Act of March 3, 1911, c. 231, 36 Stat. 1087.  Those sections in similar terms declared the jurisdiction of the District Court and the exclusive jurisdiction of the Courts of the United States, "of all civil causes of admiralty and maritime jurisdiction, saving to suitors in all cases the right of a common-law remedy where the common law is competent to give it."  The amendment added, "and to claimants the rights and remedies under the workmen's compensation law of any State."    I thought that claimants had those rights before.  I think that they do now both for the old reasons and for new ones.

I do not suppose that anyone would say that the words, "The judicial power shall extend . . . to all cases of admiralty and maritime jurisdiction," Const. Art. III, § 3, by implication enacted a whole code for master and servant at sea, that could be modified only by a constitutional amendment.  But somehow or other the ordinary common-law rules of liability as between master and servant have come to be applied to a considerable extent in the admiralty.  If my explanation, that the source is the common law of the several States, is not accepted, I can only say, I do not know how, unless by the fiat of the judges.  But surely the power that imposed the liability can change it, and I suppose that Congress can do as much as the judges who introduced the rules. For we know that they were introduced and cannot have been elicited by logic alone from the mediæval sea laws.

But if Congress can legislate it has done so.  It has adopted statutes that were in force when the Act of October 6, 1917, was passed, and to that extent has acted as definitely as if it had repeated the words used by the

several States—a not unfamiliar form of law.   *Gibbons v. Ogden*, 9 Wheat. 1, 207; *Hobart v. Drogan*, 10 Pet. 108, 119; *Cooley v. Board of Wardens*, 12 How. 299, 317, 318; *Interstate Consolidated Street Ry. Co. v. Massachusetts*, 207 U. S. 79, 84, 85; *Franklin v. United States*, 216 U. S. 559; *Louisville & Nashville R. R. Co. v. Western Union Telegraph Co.*, 237 U. S. 300, 303. An act of Congress, we always say, will be construed so as to sustain it, if possible, and therefore if it were necessary, the words "rights and remedies under the workmen's compensation law of any State" should be taken to refer solely to laws existing at the time, as it certainly does at least include them.   See *United States v. Paul*, 6 Pet. 141.   Taking the act as so limited it is to be read as if it set out at length certain rules for New York, certain others more or less different for California, and so on.   So construed the single, objection that I have heard to the law is that it makes different rules for different places, and I see nothing in the Constitution to prevent that.   The only matters with regard to which uniformity is provided for in the instrument so far as I now remember, are duties, imposts and excises, naturalization and bankruptcy, in Article I, § 8.   As to the purpose of the clause concerning the judicial power in these cases nothing is said in the instrument itself.   To read into it a requirement of uniformity more mechanical than is educed from the express requirement of equality in the Fourteenth Amendment seems to me extravagant.   Indeed it is contrary to the construction of the Constitution in the very clause of the Judiciary Act that is before us.   The saving of a common-law remedy adopted the common law of the several States within their several jurisdictions, and, I may add by way of anticipation, included at least some subsequent statutory changes.   *Steamboat Co. v. Chase*, 16 Wall. 522, 530–534. *Knapp, Stout & Co. Company v. McCaffrey*, 177 U. S. 638, 645, 646.   *Rounds v. Cloverport Foundry & Machine*

*Co.,* 237 U. S. 303, 307.  I cannot doubt that in matters with which Congress is empowered to deal it may make different arrangements for widely different localities with perhaps widely different needs.  See *United States* v. *Press Publishing Co.,* 219 U. S. 1, 9.

I thought that *Clark Distilling Co.* v. *Western Maryland Ry. Co.,* 242 U. S. 311, went pretty far in justifying the adoption of state legislation in advance, as I cannot for a moment believe that apart from the Eighteenth Amendment special constitutional principles exist against strong drink.  The fathers of the Constitution so far as I know approved it.  But I can see no constitutional objection to such an adoption in this case if the act of Congress be given that effect.  I assume that Congress could not delegate to state legislatures the simple power to decide what the law of the United States should be in that district.  But when institutions are established for ends within the power of the States and not for any purpose of affecting the law of the United States, I take it to be an admitted power of Congress to provide that the law of the United States shall conform as nearly as may be to what for the time being exists.  A familiar example is the law directing the common-law practice, &c., in the District Courts to "conform, as near as may be, to the practice," &c., "existing at the time" in the State Courts.  Rev. Stats., § 914.  This was held by the unanimous Court to be binding in *Amy* v. *Watertown, No. 1,* 130 U. S. 301.  See *Gibbons* v. *Ogden,* 9 Wheat. 1, 207, 208; *Cooley* v. *Board of Wardens,* 12 How. 299, 317, 318.  I have mentioned the scope given to the saving of a common-law remedy and have referred to cases on the statutes adopting state pilotage laws.  Other instances are to be found in the acts of Congress, but these are enough.  I think that the same principle applies here.  It should be observed that the objection now dealt with is the only one peculiar to the adoption of local law in advance.  That of

want of uniformity applies equally to the adoption of the laws in force in 1917. Furthermore we are not called on now to consider the collateral effects of the act. The only question before us is whether the words in the Constitution, "The judicial power shall extend to . . . all cases of admiralty and maritime jurisdiction" prohibit Congress from passing a law in the form of the New York Workmen's Compensation Act—if not in its present form, at least in the form in which it stood on October 6, 1917. I am of opinion that the New York law at the time of the trial should be applied and that the judgment should be affirmed.

MR. JUSTICE PITNEY, MR. JUSTICE BRANDEIS and MR. JUSTICE CLARKE concur in this opinion.