# NEW YORK & PORTO RICO S. S. COMPANY
### v.
## JOSÉ E. BENEDICTO ET AL.

---

San Juan, Equity, No. 1074.

ADMIRALTY LAW IN PORTO RICO.

Admiralty—Contract and Tort.

　　1. In an admiralty contract, jurisdiction goes according to the nature of the contract; in tort, locality governs.

Water Areas—Organic Acts.

　　2. Under the Foraker Act harbor areas and navigable waters were not delegated to Porto Rico; the Jones Act changes this.

NOTE.—On applicability of the Federal Employers' Act or State Compensation Acts to injuries within admiralty jurisdiction, see note in L.R.A. 1918C, 474.

On power of Congress to permit application of State Workmen's Compensation Law to injuries within admiralty jurisdiction, see note in 11 A.L.R. 1155.

New York & P. R. S. S. Co. v. Benedicto.

Porto Rico—Territory.

    3. Porto Rico is a territory of the United States, but not incorporated into the Union. Congress may pass separate legislation for Porto Rico.

Workmen's Relief—Shipping.

    4. Congress cannot delegate to a state the power to control maritime matters.

Workmen's Relief—No Such Power in Porto Rico.

    5. Assuming that Congress could give such a right to a territory, it has not done so under the legislation as to Porto Rico.

Opinion filed May 4, 1921.

---

*Mr. Charles Hartzell* for plaintiff.

*Messrs. Guerra-Mondragon & Soldevila* for defendants.

HAMILTON, Judge, delivered the following opinion:

This suit is brought to enjoin the Workmen's Relief Commission of Porto Rico from enforcing the rendition of reports and collection of assessments against the New York & Porto Rico Steamship Company, a line doing business between New York and Porto Rico. The law in question is the Workmen's Accident Compensation Act passed February 25, 1918, amended June 19, 1919 and May 6, 1920. The part of the act complained of is that relating to maritime accidents happening to laborers loading and discharging vessels. The matter comes up on a motion to dismiss.

1. There can be no question that the part complained of relates to maritime matters. Claims arising ex contractu re-

New York & P. R. S. S. Co. v. Benedicto.

late to the nature of the contract in question, that is to say, its relation to navigation, while those relating to cases ex delicto are defined by their locality, that is to say, the high seas or wharves and the seashore used in connection with navigation. 1 R. C. L. 417, § 19; New England Mut. M. Ins. Co. v. Dunham, 11 Wall. 1, 24, 20 L. ed. 90, 97. Maritime jurisdiction extends not only to the high seas as such, but to rivers, bays, and harbors tributary thereto and furnishing interlocking business.

2. Such being the maritime jurisdiction of Federal courts, and this court being given all the jurisdiction of Federal courts generally, how far is this limited by the legislation of the United States in regard to Porto Rico? The United States acquired Porto Rico from Spain by the Treaty of Paris, and the Foraker Act in § 13 placed under the control of the local government of Porto Rico property acquired from Spain not including harbor areas and navigable waters. The Jones Act of March 2, 1917, made a change in this regard and placed the harbor areas and navigable waters of Porto Rico under the control of the local government. The title was not passed to the local government, but in §§ 25 and 37 full control was given, and a local legislature was given general power of legislation. Section 2, ¶ 10, being in the Bill of Rights, has also the provision that "nothing contained in this act shall be construed to limit the power of the legislature to enact laws for the protection of the lives, health, or safety of employees." The legislative power created includes "also the power to alter, amend, modify or repeal any and all laws and ordinances of every character now in force in Porto Rico, or municipality or district thereof." There was a Workmen's Accident Law

of April 13, 1916, then in force. Section 57 provides that laws and ordinances were to continue in force and effect until amended by the legislature.

It is under these provisions that it is sought to justify the Workmen's Relief Act in question.

3. There is no doubt that under the Insular Cases (De Lima v. Bidwell) 182 U. S. 1, 45 L. ed. 1041, 21 Sup. Ct. Rep. 743, and under the case of Porto Rico v. Tapia, 245 U. S. 639, 62 L. ed. 525, 38 Sup. Ct. Rep. 192, in this court, and a similar case of Porto Rico v. Muratti, 245 U. S. 639, 62 L. ed. 526, 38 Sup. Ct. Rep. 192, Porto Rico is to be considered as territory of the United States, organized for local purposes, but not incorporated into the United States so that the Constitution of the United States applies proprio vigore. The accepted construction of the law is that the Constitution applies to Porto Rico to the extent which Congress indicates by legislation. In other words, Congress can say how much of the Constitution applies to Porto Rico and how much does not, except that there are certain inalienable rights of man which even Congress would be powerless to change. Downes v. Bidwell, 182 U. S. 282, 45 L. ed. 1104, 21 Sup. Ct. Rep. 770. And there are certain limitations upon the powers of Congress itself in the way of any legislation. In legislating for territories, even those unincorporated into the Union, Congress exercises the combined powers of a general and of a state government. Chief Justice Marshall in American Ins. Co. v. 356 Bales of Cotton, 1 Pet. 511, 7 L. ed. 242.

There is no question, therefore, that Congress could make a different rule for Porto Rico from that applying to other

parts of the Union. The only question is, Has Congress done so?

4. In the case of Southern P. Co. v. Jensen, 244 U. S. 205, 61 L. ed. 1086, L.R.A.1918C, 451, 37 Sup. Ct. Rep. 524, Ann. Cas. 1917E, 900, 14 N. C. C. A. 597, the Supreme Court of the United States decided that a state could not pass a law on the subject of accidents occurring to workmen employed in marine labor, because such a law would be in conflict with the jurisdiction, conferred by art. 3, § 2 of the Constitution, over all cases of admiralty and maritime jurisdiction, and with art. 1, § 8, that Congress has the right to establish laws necessary to the execution of the powers of the Federal government. It was held, therefore, that a state law could not apply to a matter of maritime jurisdiction. In order to meet this decision and leave such control with the state government, Congress amended § 9 of the Judiciary Act of 1789 so as to extend laws for the indemnity of workmen to those employed in maritime labor. This amendment, however, proved ineffective.

This was decided in the case of Knickerbocker Ice Co. v. Stewart, a decision of the Supreme Court dated May 17, 1920 [253 U. S. 149, 64 L. ed. 834, 11 A.L.R. 1145, 40 Sup. Ct. Rep. 438, 20 N. C. C. A. 635]. The court held, five judges for the opinion and four dissenting, that Congress cannot delegate such powers to a state. The ground of dissent, in both cases, by Justice Holmes and others, is that until Congress acts the rule applies that the states may act, following the principle long since announced as to pilots, buoy, quarantine, and the like. The view of the majority, however, is that this is not a case of that character, but relates to a subject re-

New York & P. R. S. S. Co. v. Benedicto.

quiring uniform legislation, and the fact that Congress has not acted is an indication that Congress does not think any action should be had in the premises.

5. Under these circumstances, what is the law in Porto Rico? Has Congress by the provisions of the Jones Act given the local legislature the right which the state of New York does not possess of extending its workmen's relief laws to seamen or people engaged in maritime business? Whether Congress could directly do for Porto Rico what it could not do for a state of the American Union need not be discussed. It need not be decided whether a maritime right is one of those matters which is inalienable or is a matter which Congress could not legislate upon. The only question is, what has Congress done? What is the proper construction of the legislation above recited, particularly in the Jones Act? There is a general tendency to pass workmen's relief laws. Congress has not expressly acted upon the subject, but laws have been passed for the protection of workmen in interstate commerce. This particular form of workmen's relief, however, has not been adopted by Congress. The geographical position of Porto Rico, so different, for instance, from that of the Philippines, must be taken into account in construing acts of Congress. Porto Rico, particularly with the Virgin islands recently acquired, is a gateway to the Panama Canal, which may be said to be one of the most vital points of the American Union. The coast line of the United States was extended to the Canal Zone and is to be considered as no less extended to include Porto Rico. It is impossible to think of Porto Rico as separate from the American system, whatever may be the rights which Congress may leave to the legislature for local self-government. Admiralty has always

been a special part of the Anglo-American legal system, governed from the nature of the subject by its own principles and requiring special courts and special handling. It is quite true that Congress can adopt local courts for purposes of administrating admiralty. American Ins. Co. v. 356 Bales of Cotton, supra. But Congress has not done any such thing in Porto Rico as to the judiciary. The most that is argued is an implication that Congress has taken the regulation of certain maritime matters out of the hands of the Federal court. The Constitution expressly provides that English admiralty is adopted as part of the American system, saving to suitors their common-law remedies. It is not contended that the workmen's relief legislation is a common-law remedy in the sense of the Constitution. England, being an island, is absolutely dependent upon maintenance of the admiralty and maritime system which she has developed, and it would seem that the United States has not only adopted the same theory, but that the growth of the United States towards the south must rest upon the same principles. It is impossible to think that Congress intended to take a step backward as to national affairs in granting Porto Rico the right to govern her local affairs. Whatever might be true if Congress had in so many words passed such a law, it certainly cannot be a matter of implication from an act which may have a full field of operation otherwise. The sugar fields, the sugar centrals of the lowlands, the tobacco fields and factories of the hills and towns, the coffee plantations of the mountains, and other growing industries on all hands furnish ample scope for the operation of the workmen's relief law and the Jones Act without trenching upon matters which relate directly to interstate commerce.

Such a construction is both unnecessary and unreasonable. The other provisions of the Jones Act were not designed to affect the admiralty jurisdiction of the Federal court under § 41 and the Workmen's Relief Act must be limited to local concerns.

It follows, therefore, that the motion to dismiss must be denied, and the motion granted for a preliminary injunction.

It is so ordered.