**UNITED STATES CASUALTY CO. v. TAYLOR et ux.**

**TAYLOR et ux. v. UNITED STATES CASUALTY CO. et al.**

Nos. 3410, 3411.

Circuit Court of Appeals, Fourth Circuit.

April 4, 1933.

Frederick H. Horlbeck, of Charleston, S. C. (Julian Mitchell, Jr., of Charleston, S. C., on the brief), for United States Casualty Co.

John I. Cosgrove, of Charleston, S. C. (Paul M. Macmillan, of Charleston, S. C., on the brief), for John and Olive Taylor.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

### No. 3410.

The question in this case is whether the Longshoremen's and Harbor Workers' Compensation Act of March 4, 1927, c. 509, 44 Stat. 1424, 33 USCA §§ 901 to 950, covers the case of a workman who has been injured while engaged in the construction of a new ship that has been launched and nearly but not quite completed. On February 27, 1930, Robert A. Taylor, an employee of the Charleston Dry Dock & Machine Company at Charleston, S. C., was engaged in drilling holes for the placing of lights on the mast of U. S. lightship No. 115, a vessel which the company was building. She had been launched and was then afloat at a dock in the Cooper river, and was 96 or 97 per cent. complete. While doing the work, Taylor fell to the deck and received injuries from which he died on the same day. His parents filed a claim for compensation under the act in the office of the appropriate deputy commissioner, which was contested by the employer and by United States Casualty Company, its insurance carrier, on the ground that the injury and death of the employee occurred under circumstances not covered by the act, and that therefore the United States Employers' Compensation Commission lacked jurisdiction in the premises.

The deputy commissioner found the facts outlined above, and rejected the claim on the ground that the construction of a new vessel does not involve a maritime contract. The claimants then brought a bill of complaint against the deputy commissioner under the provisions of section 921 of USCA title 33 to secure an injunction restraining him from enforcing the order of rejection and to cause it to be set aside. The case was considered on the record made before the deputy commissioner; and the District Judge, observing that the question was new and not free from difficulty, held that the deceased was engaged in maritime employment at the time of his death, and that his injury and death fell within the purview of the act. He therefore decreed that the order of the deputy commissioner be reversed, and that he proceed to award compensation to the claimants in the manner provided by the statute. Subsequently, the insurance company was granted leave to intervene, and brought the case to this court on appeal.

The gist of the argument presented to sustain the decision of the District Court is that the place of the accident is the test of the jurisdiction of the Commission over claims for compensation for personal injury, just as the jurisdiction of the federal courts over maritime torts, as distinguished from their jurisdiction over matters of contract depends upon the locality of the wrong, State Industrial Commission v. Nordenholt Corp., 259 U. S. 263, 42 S. Ct. 473, 66 L. Ed. 933, 25 A. L. R. 1013; and that in each instance the power of Congress to deal with the matter rests upon the same basis. In Crowell v. Benson, 285 U. S. 22, 39, 55, 52 S. Ct. 285, 287, 76 L. Ed. 598, it was said: "As the act relates solely to injuries occurring upon the navigable waters of the United States, it deals with the maritime law, applicable to matters that fall within the admiralty and maritime jurisdiction (Const. art. 3, § 2; Nogueira v. N. Y., N. H. & H. R. Co., 281 U. S. 128, 138, 50 S. Ct. 303, 74 L. Ed. 754), and the general authority of the Congress to alter or revise the maritime law which shall

prevail throughout the country is beyond dispute. * * * In amending and revising the maritime law, the Congress cannot reach beyond the constitutional limits which are inherent in the admiralty and maritime jurisdiction. Unless the injuries to which the act relates occur upon the navigable waters of the United States, they fall outside that jurisdiction. Not only is navigability itself a question of fact, as waters that are navigable in fact are navigable in law, but, where navigability is not in dispute, the locality of the injury, that is, whether it has occurred upon the navigable waters of the United States, determines the existence of the congressional power to create the liability prescribed by the statute."

State Legislatures first provided compensation for industrial injuries, irrespective of fault or negligence, and the attempt was made to apply the state laws to workmen engaged in maritime employment upon navigable waters; but it was held that the acts when so applied were in conflict with the provisions of article 3, § 2, and article 1, § 8, of the Federal Constitution, whereby Congress was given paramount power to fix and determine the maritime law which shall prevail throughout the country. Southern Pacific Company v. Jensen, 244 U. S. 205, 37 S. Ct. 524, 61 L. Ed. 1086, L. R. A. 1918C, 451, Ann. Cas. 1917E, 900. Thereupon Congress took notice of the gap in the application of compensation laws to industrial workers in this country and successively passed two acts by which it undertook to permit the application of state workmen's compensation laws to injuries received by employees engaged upon maritime work within the admiralty and maritime jurisdiction. See the Act of October 6, 1917, c. 97, 40 Stat. 395, and the Act of June 10, 1922, c. 216, 42 Stat. 634 (28 USCA §§ 41(3), 371). Both of these acts, however, were held to be unconstitutional as a delegation of the legislative power of Congress and as defeating the purpose of the Constitution respecting the harmony and uniformity of the maritime law. Knickerbocker Ice Co. v. Stewart, 253 U. S. 149, 40 S. Ct. 438, 64 L. Ed. 834, 11 A. L. R. 1145; Washington v. W. C. Dawson & Co., 264 U. S. 219, 44 S. Ct. 302, 68 L. Ed. 646. To meet this situation, the present act of 1927 was passed, whereby Congress enacted a statute defining the persons to be affected and the injuries to be covered, and providing machinery whereby the claims of injured parties could be examined and enforced. The obvious purpose of this act was to accomplish within its sphere the same general purpose as the workmen's compensation laws of the states. Crowell v. Benson, 285 U. S. 22, 40, 52 S. Ct. 285, 76 L. Ed. 598.

Emphasizing these considerations, the appellee contends that it was the intent of Congress to exercise its power to the full extent, and that, if an injury has occurred on navigable water, and the other limitations of the act are observed, it is immaterial that the employee was not engaged in maritime employment or in the execution of a maritime contract in the literal sense of these terms. We are not concerned with the power of Congress to include within the scheme of a federal compensation law the kind of employment involved in this case, unless it appears that it was the intention of Congress to cover it within the terms of the act. Congress obviously did not intend to cover all possible maritime employees, for by section 903 it expressly provided that no compensation should be payable in respect of the disability or death of a master or member of a crew of any vessel, or any person engaged in loading, unloading, or repairing a small vessel under eighteen tons net. There are other limitations in the act. Section 902(4) defines the term "employer" as an employer any of whose employees are employed in maritime employment, in whole or in part, upon the navigable waters of the United States. The term "employee" is not otherwise defined, but the act is obviously restricted to persons engaged in maritime employment. So it was said by the Chief Justice in Nogueira v. N. Y., N. H. & H. R. Co., 281 U. S. 128, 131, 50 S. Ct. 303, 74 L. Ed. 754: "The general scheme of the Longshoremen's and Harbor Workers' Compensation Act was to provide compensation to employees engaged in maritime employment, except as stated, for disability or death resulting from injury occurring upon the navigable waters of the United States where recovery through workmen's compensation proceedings might not validly be provided by state law"; and again, in Crowell v. Benson, 285 U. S. 22, 37, 38, 52 S. Ct. 285, 287, 76 L. Ed. 598: "The act has two limitations that are fundamental. It deals exclusively with compensation in respect of disability or death resulting 'from an injury occurring upon the navigable waters of the United States' if recovery 'through workmen's compensation proceedings may not validly be provided by State law,' and it applies only when the relation of master and servant exists."

Section 903(a) of the act provides: "Compensation shall be payable under this

chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the ·navigable waters of the United States (including any dry dock) and if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law." We are particularly concerned here with so much of this limitation as restricts recovery to those instances where recovery through workmen's compensation proceedings may not validly be provided by state law. The significance of this phrase was brought out in Crowell v. Benson, 285 U. S. 39, 52 S. Ct. 285, 287, 76 L. Ed. 598, where it was said: "In limiting the application of the act to cases where recovery 'through workmen's compensation proceedings may not validly be. provided by State law,' the Congress evidently had in view the decisions of this Court with respect to the scope of the .exclusive authority of the national Legislature. The propriety of providing by federal statute for compensation of employees in such cases had been expressly recognized by this Court, and within its sphere the statute was designed to accomplish the same general purpose as the Workmen's Compensation Laws of the States." The cases referred to as bearing out this interpretation of the language were Southern Pacific Co. v. Jensen, Knickerbocker Ice Co. v. Stewart and Washington v. Dawson, supra, in which the authorized scope of state compensation statutes was discussed, and it was shown that, in so far as they attempted to deal with cases within the maritime and admiralty jurisdiction, they were. unconstitutional.

We conclude from these pronouncements of the Supreme Court that the federal act is applicable only to workmen engaged in maritime employment, and that compensation under the act may lawfully be paid only in those cases in which a state has no authority to act. The phrase "may not validly be provided by State law" obviously refers to the authority of a state to act and ·not to the inquiry as to whether a state has exercised its power. Congress intended to occupy only a portion of the field (the crews of ships being· excepted) from which the states are excluded, and to abstain altogether from duplicating the work of the states in the field which they arc permitted to enter. Concurrent remedies in both state or federal proceedings are not available. It was the original policy of Congress to leave to the states, as ·far· as possible,· to provide compensation to· workers for· industrial accidents, and this policy has been continued in the present statute. It is noteworthy that by this course of action the requirement of uniformity in matters of admiralty and maritime jurisdiction is observed. Southern Pacific Company v. Jensen, 244 U. S. 205, 215, 216, 37 S. Ct. 524, 61 L. Ed. 1086, L. R. A. 1918C, 451, Ann. Cas. 1917E, 900.

██ We come then to the nature of the injured man's employment in this case, and to determine whether it lay within the scope of permissible state compensation legislation. He was engaged upon navigable waters in the completion of a new ship launched but not quite finished or placed in navigation as an instrumentality of commerce. Such work is not maritime in the accepted meaning of that term. In Grant Smith-Porter Co. v. Rohde, 257 U. S. 469, 42 S. Ct. 157, 66 L. Ed. 321, 25 A. L. R. 1008, it was held that a carpenter at work upon the construction of a vessel lying at a dock in the Willamette river, substantially completed but not ready for delivery, was not engaged in an activity which had any direct. relation to navigation or commerce. He claimed that he was injured through the negligence of his employer in the construction and maintenance of a scaffolding, and brought suit in admiralty for tort. The locality of the injury would ordinarily have warranted such a suit, but the Oregon State Compensation Law was applicable to the situation, and it provided that the right of a workman to receive compensation under the statute for injuries should be in lieu of all other claims against the employer therefor. It was held that the parties had contracted with reference to this statute, and that the action in admiralty could not be maintained. This conclusion was declared to be in harmony with such cases as Southern Pacific Co. v. Jensen, 244 U. S. 205, 37 S. Ct. 524, 61 L. Ed. 1086, L. R. A. 1918C, 451, Ann. Cas. 1917E, 900; Chelentis v. Luckenbach S. S. Co., 247 U. S. 372, 38 S. Ct. 501, 62 L. Ed. 1171; Union Fish Co. v. Erickson, 248 U. S. 308, 39 S. Ct. 112, 63 L. Ed. 261; Knickerbocker Ice Co. v. Stewart, 253 U. S. 149, 40 S. Ct. 438, 64 L. Ed. 834, 11 A. L. R. 1145, for in each of them the employment or contract was maritime, and hence the provisions of the state compensation law could not be applied. More recently, it was held in Baizley v. Span, 281 U. S. 222, 50 S. Ct. 306, 74 L. Ed. 819, that the provision of the Workmen's Compensation Act of Pennsylvania (77 PS § 1 et seq.) could not be applied to the case of a workman engaged in making repairs to a completed vessel afloat in the Delaware river. be-

cause the work had a direct relation to navigation and commerce, and a claim for injuries suffered in the course of such employment is controlled exclusively by the maritime law. These cases make it clear that a state has the power to provide compensation for injuries suffered by a workman employed in the construction of a vessel afloat upon navigable waters.

It follows that the deputy commissioner was barred from awarding compensation in this case by the limitation imposed by section 903(a) of the act. This conclusion is in harmony with the provisions of section 902(4), which defines an employer under the act as one whose employees are employed in maritime employment; for workmen so engaged may not be provided with compensation by state law. We think it is clear that Congress used the words "maritime employment" in the same sense as they were used by the Supreme Court in the cited cases pertaining to state compensation laws, for these decisions were in the mind of Congress when it passed the act of 1927 in order to provide for compensation to maritime workers that the states could not supply.

South Carolina, unlike most of the states, has not seen fit to pass a workmen's compensation act. But this circumstance is not material in the pending case, for our decision depends upon the existence, and not upon the exercise, of the power of the state to give to its people the benefits of such legislation.

### No. 3411.

This case, although docketed as a separate suit, is in effect a cross-appeal by the complainants and successful parties below in the foregoing suit from so much of the decree of the court as permitted intervention by the insurance carrier. After the District Court had rendered its original decree, United States Casualty Company, the insurance carrier for the employer, filed a petition in the case praying that the decree be set aside, and that it be allowed to intervene as party defendant so that it might prosecute an appeal to this court. It had been a party to the proceedings before the deputy commissioner, and its counsel had assisted the United States attorney in defending the suit in the District Court, but it had not been a formal party thereto. The United States attorney, on behalf of the deputy commissioner, filed an answer to the intervening petition to the effect that he did not desire to prosecute an appeal, but did not object to intervention by the carrier for that purpose. The complainants demurred to the petition on the ground that the court was without power under the act to allow the intervention. The District Court vacated the decree and granted the petition, making the casualty company a party defendant in the case upon condition that it adopt the answer of the deputy commissioner and be bound by the testimony that had been taken. Thereafter a formal decree was entered, whereby the prior decree was confirmed against the deputy commissioner and the casualty company. The casualty company appealed from the reversal of the decision of the deputy commissioner, as we have seen, and the complainants in the District Court appealed from its order permitting the carrier to intervene.

The complainants contend that the District Court was without power to allow an intervention after the rendition of its final decree, and that the casualty company had no such interest in the litigation as entitled it to intervene. The carrier's interest is said not to be direct and immediate, but secondary and consequential, the primary liability resting upon the employer. References are made to the several sections of the act which provide, without mentioning the carrier, that notice of injury or death must be given to the employer, section 912(a); that liability to pay compensation may be controverted by the employer, section 914(a), and that the claimant and employer may each present evidence at the hearing, section 919(d). There are, however, other sections of the act which show conclusively that the sections quoted, while mentioning only the rights and liabilities of the employer, have a direct bearing upon the rights and obligations of the insurance carrier, and clearly contemplate the right of the carrier to be heard in opposition to any claim. Undoubtedly the carrier is an interested party within the meaning of section 919(b), which provides that, within ten days after a claim for compensation has been filed, the deputy commissioner shall give notice thereof to the employer and any other person whom he considers an interested party; and within the meaning of section 919 (c), which directs the deputy commissioner to order a hearing upon the application of any interested party upon ten days' notice to all interested parties; and within the meaning of section 921(b), which authorizes any party in interest to bring injunction proceedings to suspend or set aside a compensation order which is not in accordance with law. Section 919(h) requires the injured employee to submit to a physical examination by a duly qualified physician designated

by the commission, and such physicians as the employer, employee, or carrier may select and pay for may participate in the examination. Under the similar provisions of the New York Compensation Act (Consol. Laws N. Y. c. 67), upon which the federal act was modelled [see Wheeling Corrugating Company v. McManigal (C. C. A.) 41 F. (2d) 593], it has been held that the insurance carrier is a party in interest [Jaabeck v. Theodore A. Crane's Sons Co., 238 N. Y. 314, 144 N. E. 625].

An important part of the whole scheme of administration under the act is that contained in section 932, which requires the employer to secure payment of compensation in divers ways, including insurance with any stock company or mutual company or association authorized by law to insure workmen's compensation. Section 935 makes sweeping provisions for the substitution of the carrier for the employer in order that the liability for compensation may be most efficiently discharged and the administration of the law may be facilitated. The Commission is directed to provide by regulation for the discharge by the carrier for the employer, of such obligations imposed by the act as the Commission considers proper in order to carry the law into effect. The section provides that "for such purposes (1) notice to or knowledge of an employer of the occurrence of the injury shall be notice to or knowledge of the carrier, (2) jurisdiction of the employer by a deputy commissioner, the commission, or any court under this chapter shall be jurisdiction of the carrier, and (3) any requirement by a deputy commissioner, the commission, or any court under any compensation order, finding, or decision shall be binding upon the carrier in the same manner and to the same extent as upon the employer."

These provisions of the statute show that the insurance carrier of an employer has such an interest in the claim of an injured employee as to justify the carrier's intervention in a suit to review the compensation order of the deputy commissioner. Equity Rule 37 (28 USCA § 723) provides that any one claiming an interest in the litigation may at any time be permitted to assert his right by intervention; and it is well established that, if the party applying for intervention has a direct legal interest in the pending litigation, so that he will obtain immediate gain or suffer loss from any judgment that may be rendered between the original parties, the court is authorized, in its discretion, to allow the intervention to take place; and in some instances intervention is a matter of right. Smith v. Gale, 144 U. S. 509, 518, 12 S. Ct. 674, 36 L. Ed. 521; Radford Iron Co. v. Appalachian Electric & Power Co. (C. C. A.) 62 F.(2d) 940. The propriety of the exercise of the discretion by the court in the carrier's favor in such a case as the present is unassailable, if there is no statute forbidding it, since there was no one else who was damaged by the reversal of the deputy commissioner's decision. The employer was protected by his policy of insurance, and the deputy commissioner had only the interest of an impartial tribunal.

The claimants, however, contend that the carrier may not properly be made a party defendant in the suit in equity because section 921(b) of USCA, title 33, directs that the suit be brought against the deputy commissioner, while section 921a, 33 USCA, imposes the duty upon the United States attorney to appear for him in the District Court and in any court to which the case may be carried on appeal. If this interpretation is correct, the result would be that only the losing party before the deputy commissioner, whether it be the injured workman on the one hand, or the employer or the insurance carrier on the other, would have the right to be heard in the injunction suit in either the District Court or in the Circuit Court of Appeals, and the successful party before the deputy commissioner would have no right to defend the advantage which he had won. This conclusion is too unreasonable to be entertained.

The injured employee, the employer, and the carrier are all clothed with a sufficient interest in the result of such a suit as to be granted permission to intervene as a matter of course, under the established practice prevailing in equity; and it cannot be supposed that it was the intent of Congress to forbid this just procedure merely because it failed expressly to authorize the joining of the successful party before the deputy commissioner as a defendant in the subsequent suit. On the contrary, the court should be all the more ready to exercise its discretion so that the act may be enforced according to its spirit, and a speedy decision of controverted cases may be accomplished. Indeed, it would seem to be good practice for the plaintiff in the equity suit to notify all adverse interested parties of the institution of the case so that any one who desires may apply for leave to intervene; and the deputy commissioner should perhaps be required to do so by regulation promulgated by the Commission under the authority of section 939 of USCA,

title 33. An interested person who is not a party to the suit may well dispute the authority of the District Court to bind him by its decree, and, if it be held that the decree of the District Court is not binding upon him, then, if the action of the deputy commissioner is reversed and a new award is made in accordance with the decree of the District Court, a second suit could be brought therein to review the final action of the deputy commissioner.

The petition for intervention in this case was not too late. Counsel for the carrier had been permitted to take part in the case to support the finding of the deputy commissioner, and the petition of intervention was promptly filed after the adverse decree. Equity Rule 37 (28 USCA § 723), above quoted, declares that intervention may be permitted at any time, and the decisions show that it may be allowed after a final decree when it is necessary to do so to preserve some right which cannot otherwise be protected. United States v. Northern Securities Co. (C. C.) 128 F. 808, 810; Cincinnati, I. & W. R. Co. v. Indianapolis Union Ry. Co. (C. C. A.) 279 F. 356, 363.

The right of the carrier to intervention in such a case as the one now before the court does not seem to have been denied heretofore, for the cases show that in practice permission to intervene has been freely granted. New Amsterdam Casualty Co. v. Hoage, 60 App. D. C. 40, 46 F.(2d) 837; Georgia Casualty Co. v. Hoage, 61 App. D. C. 195, 59 F.(2d) 870; Howard v. Monahan (D. C.) 31 F. (2d) 480, 481.

The order of intervention was well founded, but the decree on the merits of the case must be reversed.

Case No. 3410, reversed.

Case No. 3411, affirmed.