Before STATE INDUSTRIAL COMMISSION, Respondent.

In the Matter of the Claim of NICHOLAS NEWHAM, Respondent, for Compensation under the Workmen's Compensation Law, v. CHILE EXPLORATION COMPANY, Employer and Self-Insurer, Appellant.

Third Department, February 28, 1921.

Workmen's Compensation Law — jurisdiction of subject-matter may not be given by consent and may be raised first on appeal — when expert stevedore employed by shipper to supervise loading of cargo not engaged in maritime employment — test as to whether employee is in maritime employment.

The question as to whether jurisdiction of the subject-matter is in the State Industrial Commission or in the admiralty courts may not be determined by the parties and may be raised first on appeal.

An expert stevedore, employed by a shipper to observe whether the cargo was safely and properly stowed in a steamship, and to report to his employer what he observed in these respects, who was injured while aiding an employee of a stevedoring company, employed by the captain of the steamship, who was having difficulty with a load on his truck on the dock, was not in a maritime employment nor was he under a maritime contract.

The true test as to whether or not an employee is in a maritime employment or under a maritime contract is the subject-matter of the contract — the nature and character of the work to be done.

JOHN M. KELLOGG, P. J., dissents.

APPEAL by the defendant, Chile Exploration Company, from an award of the State Industrial Commission, made on or about the 27th day of February, 1920.

*Carroll A. Wilson* [*George O. Redington* and *R. C. Klugescheid* of counsel], for the appellant.

*Charles D. Newton*, Attorney-General [*Bernard L. Shientag* of counsel], for the respondent State Industrial Commission.

*Wood, Molloy & France* [*Francis X. Hennessy* of counsel], for the claimant, respondent.

Van Kirk, J.:

The Chile Exploration Company had engaged a portion of the space in the steamship *Maipo* to carry freight from New York to Valparaiso and other ports on the west coast of South America. The ship belonged to the government of Chile. The captain of the ship was given the sole right to employ the stevedore. The claimant Newham is and was an expert stevedore. Arne & Co. did checking and tallying of cargoes on the dock for a number of stevedoring companies. Auditore & Co. usually did the stevedoring work for the Chile Exploration Company. The claimant applied to Auditore & Co. for work on this ship. Mr. Edwards, of Arne & Co., was in the office at the time. He conferred with Mr. Talbot, who had charge of affairs for the Chile Exploration Company, and the claimant was thereupon put to work, Mr. Edwards giving him a note to the chief clerk of Arne & Co. on the dock.

The checking and tallying of goods for a cargo is no part of the stevedoring. Checking and tallying is checking the freight, as it is delivered at the dock from trucks or lighters, inspecting the packing and noting the number and quantity of the several parcels or kinds of freight. The stevedoring work was being done by Patane & Co., employed by the captain of the ship. Auditore & Co., under the direction of Mr. Edwards, acting for Mr. Talbot, advanced his wages to Newham. It does not clearly appear to whom Auditore & Co. charged these advancements.

The claimant was not employed as a stevedore, nor as a checker or tallier. The Chile Exploration Company, because it had not employed the stevedores and because it wanted its cargo space well filled and the property well stowed to protect it against injury, desired an experienced stevedore to watch the work as it was done. Claimant was given no authority to give orders on the boat, or to take part in the stowing of the cargo; he was simply there to observe and report to the shipper, so that, if the cargo was not being properly stowed, the shipper could take it up with the captain of the boat. As to the employment Mr. Talbot says: " The stevedores doing the work, we didn't know how they did the work and we wanted the stuff looked out for, to see that none of the stuff was broken up or not properly placed in the steamer,

and I wanted somebody there all the time to have a report given to me if goods were broken, or not properly stowed, or improperly placed in the steamer, and I wanted somebody there all the time that could report it to me so I could take it up with the captain of the steamer." And again: "We wanted him to oversee the work done on the steamer, in case anything was not going right that he could report it to Mr. Edwards and Mr. Edwards could report it to us.  *  *  * You see he [Newham] couldn't say anything on the steamer; it would have to be taken up by me." Still again: "Q. Why was it necessary to have an expert stevedore doing that? A. Because it was better to have a man of that sort because he would know better how to stow the stuff, for instance see that they weren't putting light cases on bottom and heavy ones on top, because then they would break, and he would see that right away and correct it." Mr. Edwards testifies that when he hired Newham he told him "not to interfere with the storage of the ship by the other stevedores, unless he saw something wrong, and if he did to report to me and then I would report to Mr. Talbot." Mr. Edwards has stated that Newham had some further duty in the line of helping the stevedores, but Edwards was not the agent of the employer. The Commission has accepted, we think justifiably, the testimony of Mr. Talbot on this subject.

The claimant gives this account of the manner of his injury: The foreman of the stevedoring company " asked me to shift the lighters for him,— will I ' be so kind as to move the lighters out of the way? '; and I told him, ' Sure.' I started up the dock — I was going up the dock — a fellow was coming down with a hand truck. Of course, he was standing there with a piece of iron, and he was right across the dock, and I started — I said to him, ' What's the matter, John? ' He says, ' Kindly come aboard; it's too heavy.' I said, ' Hold your hands on the handles of the truck and when I get around I will straighten it out for you.' He was sitting on the truck and freight on the center and freight on the side of the dock, and I went to go around the truck where the iron was, and just as I got around to the end of the plate and started to straighten it up he let go his hand." The piece of iron slid across and struck his foot. Some time after the foot was amputated. It is not

disputed that the amputation necessarily resulted from the injury received.    The appellant claims that the evidence does not sufficiently show that the Chile Exploration Company was the claimant's employer; that Newham was employed by Mr. Talbot for the Chile Exploration Company through Mr. Edwards.    We find sufficient evidence to support the finding of the Commission in this respect.

We turn then to the principal question on this appeal; whether jurisdiction of the subject-matter is in the State Industrial Commission, or in the admiralty courts.    The claimant insists that this question is not in this court, because of an agreement with the Industrial Commission to the benefit of the claimant, made under these circumstances:    The award had been made against Arne & Co. as the employer. Later that award was changed and the Chile Exploration Company was held to be the employer.    That company, however, had not appeared at any hearing and had had no notice of the hearing at which the adjudication against it was made. It applied for a rehearing, and an agreement was made that the weekly payments should be regularly advanced to Newham during the pendency of the litigation, and that whichever company was finally held to be liable as employer should reimburse the party who had made the advancements.    It was understood and agreed between the Chile Exploration Company and the Commission that no question should be raised upon the appeal excepting who was the employer.    At that time the question of jurisdiction was not thought of and was not introduced into the case until the decision of the United States Supreme Court in *Knickerbocker Ice Co.* v. *Stewart* (253 U. S. 149).

The position of the claimant in this respect cannot be sustained.    There is a clear distinction between the privilege of appealing and the jurisdiction of the court over the subject-matter in dispute.    A party may waive or contract away his right to appeal (3 C. J. 662; *Townsend* v. *Masterson, etc., Stone Dressing Co.*, 15 N. Y. 587), and jurisdiction of the person may be given by consent; but jurisdiction of the subject-matter may not.    (*Sullivan* v. *Hudson Navigation Co.*, 182 App. Div. 152, 157; *Matter of Doey* v. *Howland Co.*, 224 N. Y. 30, 38; *Matter of Caffrey*, 52 App. Div. 264; Cooley Const. Lim. [5th

ed.] 493.)   The question of jurisdiction may be raised first on appeal.   (*Matter of Caffrey, supra; Matter of Livingston,* 34 N. Y. 555, 570.)

But Newham was not in a maritime employment, nor was he under a maritime contract.   The true test is the subject-matter of the contract — the nature and character of the work to be done.   (*Matter of Doey* v. *Howland Co., supra,* 35.)   Newham's employer was not the employer of the stevedore.   The captain of the ship alone had charge of the stevedoring and the right to hire.   The Chile Exploration Company could not employ stevedores for this ship.   Newham was not employed to do stevedore work, nor checking and tallying.   His employer was not engaged in a maritime business.   He was employed to do that which a cargo owner, a shipper, could do himself had he the necessary knowledge and experience and that in which such shipper (not the shipowner or captain) would have the chief interest, namely, to observe whether the cargo was safely and properly stowed in order to protect the property and use all available cargo space.   He was to do none of the work and to give no orders; he was simply to report to the shipper what he observed in these respects.   He was not then to do any maritime work, but to report only how the maritime work was being done, and this report was to be made to his employer, who was not doing maritime work or business.   When injured Newham was indeed accommodating an employee of the stevedore, a stranger in his relations to Newham's employer; carrying a message for him; and, while so occupied, he volunteered to aid another employee of the stevedore, who was having difficulty with a load on his truck on the dock.   Mr. Talbot, who employed Newham for the Chile Exploration Company, testifies to the purposes for which he employed him, and he testifies that such work is not stevedoring.   The fact that Newham was an expert stevedore is not sufficient on which to find that he was at the time doing stevedoring work, or maritime work.   When, upon receiving the decision in *Knickerbocker Ice Co.* v. *Stewart* (*supra*), the Chile Exploration Company made its motion to have vacated the former decision, the Industrial Commission, in denying the motion, held that Newham was not working under a maritime contract and his case was not within maritime

jurisdiction. We find no sufficient reason for believing this decision was erroneous.

No other question as to jurisdiction has been raised or argued.

The award should be affirmed.

All concur, KILEY, J., with a memorandum, except JOHN M. KELLOGG, P. J., who dissents on the authority of *Matter of Doey* v. *Howland Co.* (224 N. Y. 30).

KILEY, J. (concurring):

There are two very able briefs in this case; the brief of claimant's counsel I regard as the best I have seen on that side of the question in any of these cases. I have been unable to find that one of the questions here presented has been passed upon heretofore in the courts. It is established that a party may waive his constitutional rights; also that parties cannot confer jurisdiction, not otherwise had, upon a court by stipulation. It is also established that the question of the lack of jurisdiction can be raised at any time during the course of the proceeding or action; but it has not been determined whether or not a party can, by stipulation, foreclose his right to raise that question? If he can, this appellant has, by stipulation, foreclosed its right to raise that question upon this appeal. In the view of the case taken by Mr. Justice VAN KIRK in his admirable opinion the question does not have to be decided on the determination of this appeal. He finds that the claimant was not engaged in maritime work. That question is decidedly close. This man was employed, not in the actual physical labor of stevedoring, or to openly superintend or oversee the work of stevedoring, but such work as he was employed to do arose out of and was incidental to maritime work. If the men doing the work of stevedoring placed a small package or article toward the bottom of the pile or tier of the goods or commodity being packed in the hold of the ship, it was claimant's duty and his work to report that to his superior, who could have the error corrected; so that while claimant did not do the actual physical work of changing the location of the article, he was the one who caused it to be done. In *Sullivan* v. *Hudson Navigation Co.* (182 App. Div. 152) Mr. Justice WOODWARD

wrote: " It is not the particular kind of work which the person is qualified to perform, or the fact that he is performing a particular kind of work, which determines the exclusive jurisdiction of a court of admiralty; it is the character of the contract — whether it has reference to maritime service or maritime transactions." Claimant's contract had reference to both maritime service and maritime transactions. If we should find that it had, then it would be necessary to pass upon the other question above suggested, viz., the force of the stipulation.

I concur in result.

Award affirmed.