## Case No. 4,504.

### The EOLIAN.

[1 Biss. 321.] [1]

Circuit Court, S. D. Ohio.   June, 1860. [2]

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

[2] [Modifying Case No. 8,465.]

A. H. McGuffey and Mills & Hoadley, for libellant.

T. D. Lincoln, for respondent.

McLEAN, Circuit Justice. On the 7th of January, 1859, the above steamer was libelled by her captain and clerk at Cincinnati, and soon afterwards, on the application of the said master and clerk, the vessel was sold upon an interlocutory order. While in the hands of the marshal, the seamen and material-men, having admiralty liens upon the vessel, intervened and set up their claims.

On the sale of the boat it did not bring enough to discharge the admiralty liens established against her, even excluding the claim of the captain and clerk. The captain claimed two hundred dollars per month wages as pilot, professing to have received his wages as captain, and the sum of $496.24 was allowed him as pilot by the district court. [Case No. 8,465.] The material-men, not being paid in full, appealed to this court from that part of the decree.

The question made is, whether the master is entitled to the allowance made to him as pilot, while he received the pay and discharged the duties of master.

As the master contracts with the owners of the ship and upon their personal credit, he has no lien on the ship or freight for his wages. The master is the agent of the owners and he has a right to pay himself for his expenses and charges out of the sale of the cargo; but he has no preferable lien as the seamen have, on the ship and cargo. It is said that this lien adheres to the last plank of the ship.

Mr. Justice Ware in Drinkwater v. The Spartan [Case No. 4,085], says: "It is a well settled principle of law in this country, that the master has no remedy for his wages against the vessel." But he argues against the equity of this rule, and thinks that the master should be entitled to his lien. But the argument, as well as the rule, is against the master. He is the agent of the owners. and receives the earnings of the ship and pays them over to whom of right they belong; and he has a lien on the freight, not only for his wages but for his own disbursements. He has various duties as connected with his services as master, which bind him to the fulfillment of his whole duties. These responsibilities should not be changed nor lightly regarded. The Grand Turk [Id. 5,683]; Fisher v. Willing, 8 Serg. & R. 122; Brown v. Lull [Case No. 2,018]; Poland v. The Spartan [Id. 11.246]; Sheppard v. Taylor, 5 Pet. [30 U. S.] 711.

In Gardner v. The New Jersey [Case No.

5,233], the judge says: "I do not find any precedent or authority to warrant my granting the prayer of the master's petition in the case before me for his wages. His contract is clearly personal, and made with and on the credit of the owners resident here, and not on that of the ship."

The pilots are often, if not generally, designated by the master of the vessel; and there would seem to be a great propriety in such a rule, as the commandant of the vessel should have confidence in those so intimately connected with the management of the ship.

Captain Logan had the command of the boat after Benedict left her, and from that time there seems to have been no regular pilot on board. From several witnesses it appears that when the boat was about to land, Logan would take the command of her as pilot, and bring her to a proper mooring.

Aldrich acted as captain some eight or twelve days, but he was no pilot, and never saw the river before, to the knowledge of the witness. Logan says that he received for his services seventy five dollars per month, in addition to what he was to receive as pilot.

The pilot, by his employment, ordinarily is entitled to a lien on the boat, as the other hands employed. The laws regulating pilotage have generally been adopted from the respective laws of the states. The master has no lien on the ship for his wages, but he claims a lien on the ship for his compensation as pilot. These claims are incompatible. As pilot he may claim more than he is entitled to, and do wrong to the seamen. The master, being without a lien on the ship, can have no interest in making an unjust apportionment among the seamen, but this is not the case with the master, who serves also in the capacity of pilot, and who has a lien on the ship. On an occasion where, by the death of the pilot, a necessity may be thrown upon the master, temporarily obliging him to discharge the duty of pilot, it is admissible, but this can only occur under an exigency. The master and the pilot are the most efficient agents on the boat, and when he is employed in two capacities, there is also danger to the boat and her cargo.

The witnesses show, that while the pilot was necessarily at the helm, a certain person was performing the duties of master who was not fit for that duty. The master seems to have been the only person on the boat competent for its management, as master, or at the helm. This hazarded the safety of the boat and the lives of its passengers. If the boat was not lost it may have been more fortunate for the crew than they had any right to expect.

With all the care and prudence which can be exercised, a boat improperly officered always incurs danger. A vigilant policy should be required, especially by the master and pilot.

There was a strong motive in the master to unite the two capacities of master and pilot, by which means his pay was greatly increased. This is an irregularity and an abuse that should be corrected. Such a course may be adopted with the view of enabling the master, and other officers of the boat at a distant port, to seize the boat and have her sold, fraudulently.

The trusts committed to the master and pilot should never be united in the same person, as the interests represented are often conflicting, and can only be united temporarily and under an emergency.

The distinctions which exist among the officers of the boat, tend to secure the rights of the owners and others, and prevent fraudulent combinations. The double capacity in which the master acted was wrong in principle and prejudicial to all the interests concerned.

The exception to the allowance of the master as pilot, while he received the pay as master, is the only one insisted on, and the court thinks it ought to be sustained. The court will, therefore, reverse the decision of the district court on this ground, and direct the fund distributed to the pilot to be distributed to the claimants, who have a prior lien. In all other respects the decree of the district court is affirmed.