## Case No. 12,349.

### The SARAH JANE.

[1 Lowell, 203; [1] 2 Am. Law Rev. 455.]

District Court. D. Massachusetts. Feb., 1868.

ADMIRALTY—JURISDICTION—INLAND WATERS.

1. The admiralty has jurisdiction of a libel by mariners for their wages against a vessel

---

[1] [Reported by Hon. John Lowell. LL. D., District Judge, and here reprinted by permission.]

plying on navigable waters, though these waters are entirely within one state.

[Cited in The Island City, Case No. 7,109; The General Cass, Id. 5,307; The Atlantic, 53 Fed. 609.]

2. Some cases on the subject of the jurisdiction in admiralty considered.

In admiralty.

L. S. Dabney, for libellants.

C. P. Curtis, for claimant.

LOWELL, District Judge. The libellants allege that they have served as mariners on board the sloop Sarah Jane, in voyages between Boston and Quincy. The jurisdiction of the court is called in question by the claimant, on the ground that the navigation was wholly within the internal waters of Massachusetts. In a case involving this question, and in which the present claimant was the libellant, Judge Sprague upheld the jurisdiction. The Canton [Case No. 2,388]. And see The May Queen [Id. 9,360]. The question has been argued anew, especially with reference to the bearing of more recent adjudications; and I have given it careful attention. I am well satisfied that the decisions above cited are right in principle, and shall only concern myself with the authorities.

Mr. Justice Story, in De Lovio v. Boit [Case No. 3,776], laid down the broad doctrine, that the grant of admiralty and maritime jurisdiction, in the constitution of the United States, was not to be limited by a regard to the bounds which the court of king's bench in England had succeeded in imposing upon the court of admiralty of that country. After the lapse of half a century, and after a contest scarcely less animated than that which the subject had excited in England some generations earlier, it has been established here that Judge Story was right. And even in England, parliament has found it convenient to restore to the admiralty the powers which a narrow construction of the statutes of Richard II. had taken away from that forum. In the United States, the jurisdiction in civil causes has been put upon the firm foundation that, in actions ex delicto, the place determines it, and in actions ex contractu, the subject-matter; and the place is not merely the high seas, but wherever navigable water is found, whether within or without the body of a state or county. Waring v. Clarke, 5 How. [46 U. S.] 441; New Jersey Steam Nav. Co. v. Merchants' Bank of Boston, 6 How. [47 U. S.] 344; The Genesee Chief, 12 How. [53 U. S.] 443; The New World v. King, 16 How. [57 U. S.] 469; The Magnolia, 20 How. [61 U. S.] 296; Nelson v. Leland, 22 How. [63 U. S.] 48.

The victory, indeed, has not been obtained without leaving some losses to be regretted. Upon the question, What is a maritime contract? the answer has not always been very liberal; and the very contract under consideration in De Lovio v. Boit [supra], that of insurance, is not yet universally recognized as being within the scope of the grant. Glou-

cester Ins. Co. v. Younger [Case No. 5,487]. So Judge Sprague's argument, that a contract to build a ship is maritime, has been overruled, though it can hardly be said to have been answered. The Richard Busteed [Id. 11,-764]; Roach v. Chapman, 22 How. [63 U. S.] 129. And there are, possibly, some doubts yet unresolved concerning general average and some other matters. Cutler v. Rae, 7 How. [48 U. S.] 729; Dupont de Nemours v. Vance, 19 How. [60 U. S.] 162.

It is upon one of these doubtful points that this case is argued. It has been intimated by some of the learned judges, when delivering opinions in the supreme court, that perhaps the admiralty jurisdiction does not extend to contracts concerning the internal navigation of a single state. See Maguire v. Card, 21 How. [62 U. S.] 248; Bondies v. Sherwood, 22 How. [63 U. S.] 214; Allen v. Newberry, 21 How. [62 U. S.] 244; Nelson v. Leland, ubi supra; New Jersey Steam. Nav. Co. v. Merchants' Bank, ubi supra. None of these cases, except the first, is cited as an authority directly in point, and that case I will presently consider. But first, for the supposed reason for such a limitation. It is said that it may be derived by analogy from the limited grant to congress, by the eighth section of the first article of the constitution, of power to regulate commerce with foreign nations, and among the several states, and with the Indian tribes. Whether this clause does in fact restrict the powers of congress quite as closely as is sometimes thought, may perhaps be doubted. Certain it is, that the federal legislature has always exercised control over the building and navigation of vessels which were not intended for or engaged in commerce with foreign nations, or between different states. It has regulated the fisheries; the licensing, inspection, and navigation of yachts, tugs, and other vessels, which were not commercial in their character or occupation, or were destined only to navigate between ports of the same state. But whatever may be the just limits of the powers of congress over commerce and commercial contracts, I do not see any necessary connection between the two grants. There are strong reasons why the courts of admiralty should have cognizance of all maritime contracts, and by the constitution and laws they are granted it; and a contract is not the less maritime in its character because it relates to a navigation wholly within state boundaries. The cases of The Genesee Chief [supra], which uphold the admiralty jurisdiction of a collision within state boundaries as a maritime tort, decide, by necessary consequence, that a contract of affreightment between the same termini is a maritime contract. And the district courts have uniformly acted on this theory, and have taken jurisdiction of causes of salvage, towage, pilotage, and collision within the harbors of the several states, as well as upon the high seas. I am not prepared to say that the case of Maguire v. Card requires me to overrule these numerous precedents, and to deny to these libellants the name of mariner and the remedial process of the court of admiralty. That case decided that such a court would not enforce a lien given by the state law, for supplies and repairs furnished a domestic vessel employed in the navigation of the Sacramento river; and this decision appears to be rested in part upon the ground that the navigation was between ports of the same state. If that were the only point in the case, it must be held to overrule The New World v. King, 16 How. [57 U. S.] 469, which gave a remedy for breach of a passenger's contract on precisely such a voyage. But from the fact that this case is not alluded to, and that the point in question was not the most prominent, I am inclined to believe that the decision was intended merely to reassert the rule that, for supplies to a domestic vessel, there is no lien by the general maritime law; and that, if the state law gives one, the courts of the United States think it more convenient not to enforce it; as to which, see The St. Lawrence, 1 Black [66 U. S.] 522, which explains this doctrine fully. I am confirmed in this view by a decision made in the circuit court for this district, in 1861, by Mr. Justice Clifford, who took jurisdiction of a libel to enforce a contract of affreightment for a voyage between Boston and Chatham, in this state. Carpenter v. The Emma Johnson [Case No. 2,430], May term, 1861. A distinction was indeed taken, in the opinion, that the usual course of the voyage then under consideration would take the vessel out upon the high seas; but a doubt is thrown out, whether the language of the court, in Maguire v. Card, was intended to apply to bays and harbors generally; and this doubt is the more significant, because the language referred to concerning the purely internal navigation of a state, at page 251 of the report 21 How. [62 U. S.], does not mean internal by any territorial boundaries, as inter fauces terræ, but navigation between ports of the same state, as is abundantly evident from inspection of the whole opinion in that case; and if that dictum were a decision, or, at all events, if it were one of general application, the case of The Emma Johnson [supra], must have been decided adversely to the libellant. I am therefore of opinion that the weight of authority, as well as of principle, is in favor of the jurisdiction in this case.

Decree for the libellants.