## THE ATLANTIC.

### McNAMARA v. THE ATLANTIC.

#### (District Court, D. South Carolina. January 12, 1893.)

1. SEAMEN—WHO ARE—ENGINEER OF STEAM DREDGE—LIEN FOR WAGES.
Plaintiff was engineer on a steam dredge chartered for work on a government contract. He was the highest officer on the dredge, and directed the firemen and any other hands aboard, but he had no authority to engage or dismiss hands or purchase supplies. His wages were paid at the office of the charterer in Charleston, and he received pay only for each day that the dredge was at work. Held, that he was not the "master" of the dredge, within the rule denying to masters a maritime lien for wages.

2. SAME—LIEN FOR WAGES.
Plaintiff, as engineer, was entitled to a lien for wages, although the dredge was at work in the home port of the charterer.

3. SAME—ENGAGEMENT BY CHARTERER.
The fact that the plaintiff was aware of the charter at the time he was hired by the charterer did not deprive him of his lien. The International, 30 Fed. Rep. 375, followed.

4. SAME—COSTS.
The fact that plaintiff left his employment without notice, and failed to fulfill an appointment to return to his duty, and that the libel was filed without notice, was sufficient reason for denying costs to him.

In Admiralty. Libel by Joseph McNamara against the steam dredge Atlantic to recover for wages as engineer thereof. Decree for libelant.

Huger Sinkler, for libelant.
R. W. Memminger, for respondent.

SIMONTON, District Judge. The libelant was engaged as engineer on the steam dredge Atlantic, and files this libel in rem for his wages. The respondent admits the service, but denies the lien, on two grounds—First, because this is his home port; and, second, because the libelant was master of the dredge, and as such has no lien. The steam dredge was leased by Thomas Young for the purpose of completing a contract with the government. The dredge belongs to the port of Charleston. She was during a large part of the service of libelant engaged in dredging Brick Yard creek, a waterway connecting Coosaw river and Beaufort river, and afterwards in Wappoo cut, near Charleston. Libelant had been fireman on the dredge, and upon the removal of the engineer was appointed in his place. The wages were $3.50 a day for every day the dredge was at work. The dredge was under the direction and control of the re-

spondent, who made the contracts for her, and gave instructions when she should work. He was not on her, but gave his directions by visiting her in person, or by sending his son-in-law to represent him. Libelant was the highest officer on the dredge, and directed the fireman and any other hands aboard. He had no authority to purchase supplies for her, or to engage or dismiss hands aboard of her. His wages were paid at the office of the respondent in Charleston, either to libelant or to his authorized agent.

It is a puzzling question whether libelant stood in the place of the master or not. He was employed by respondent, looked to him for his wages, was paid by him, was under the control of no one but him; and in these respects came within many of the reasons given for refusing the master his lien. Drinkwater v. The Spartan, 1 Ware, 158; The Eolian, 1 Biss. 321. On the other hand, he had none of the responsibility or powers of a master, never had any independent authority, did not get continuous wages, but was paid only when his engine was at work. Upon the whole, I am of the opinion that he cannot be treated as a master of a vessel. He was master in no maritime sense. He was employed because he was an engineer, and his chief duties were to run the engine. For this reason his pay ceased when his engine stopped. His position on this dredge was analogous to that of a sailing master on a yacht, and it has been held that he is not a master. The Carlotta, 30 Fed. Rep. 378.

The next question is, has he a lien as engineer? Dredges and scows are subject to a maritime lien for services rendered. The Alabama, 19 Fed. Rep. 544. A barge without sails or rudder is subject to a lien for wages of men employed in her. Disbrow v. The Walsh Brothers, 36 Fed. Rep. 607. The engineer of a towboat has a lien. The May Queen, 1 Spr. 588. Persons employed on a steam fishing vessel only to catch fish have a lien for wages. The Minna, 11 Fed. Rep. 759. Does it affect the question that she was in her home port, and because he was employed by the lessee in person? The counsel for respondent contends that the lien does not exist in favor of the seaman at the home port. There is no authority for this proposition. "The lien of a seaman is a privileged hypothecation, jus in re, and continues until it is destroyed in some of the modes of dissolving an hypothecary interest known to the law. * * * It is his natural and best security, and that which seamen habitually look to; and, although they have a personal remedy against the owner and master, it is a case to which the rule applies 'plus cautionis in re est quam in persona,' and which they ought not lightly to be presumed to have abandoned." The Eastern Star, 1 Ware, 185. In the Sirocco, 7 Fed. Rep. 599, Judge Benedict says:

"The presumption of the maritime law is that services performed by a seaman on board a vessel are rendered upon the credit of the vessel, as well as that of the master and owners, and by that law seamen acquire a lien for their services in all cases, unless it be made to appear that a waiver of the lien and an exclusive personal credit formed part of the contract."

In this case the voyage was for fishing, and the crew shared in the result. This did not impair the lien. In Flaherty v. Doane, 1 Low.

148, seamen were held entitled to a lien on a vessel chartered for a fishing voyage, although they were hired with knowledge of the charter by the charterer, and although the ship was not responsible for supplies furnished her in the home port. A seaman had a lien for his wages though he served only in the home port, (Levering v. Bank, 1 Cranch, C. C. 152;) and, in another case, where he had never left port, (The Blohm, 1 Ben. 228.) The May Queen, supra, gave a lien to an engineer on a towboat whose only employment was towing vessels about a harbor. The Minna, supra, was a case in a home port, and so also, it would seem, was Disbrow v. The Walsh Brothers, supra. See, also, The Sarah Jane, 1 Low. 203. The lien of seamen and that of material men are wholly distinct. The former has for its sanction a principle of maritime law, existing from the earliest times. It owes its origin and its existence to law. The lien of material men is founded upon the necessity of the case. This necessity must exist before a master can bind his ship. It does not exist where the owner lives. See The International, 30 Fed. Rep. 376, and The L. L. Lamb, 31 Fed. Rep. 29. The rights of seamen are crystallized in rule 13 of the admiralty:

"In all suits for mariners' wages the libelant may proceed against the ship, freight, and master, or against the ship and freight, or against the owner or master in personam. It cannot be disputed that the libelant stands in this court as a seaman."

Any service is a maritime service if substantially to be performed on the water, within the ebb and flow of the tide. The D. C. Salisbury, Olcott, 73.

Another objection on the part of respondent to the claim of libelant is that he left his service without any notice whatever to his employer, and after repeated appointments to return to his duty which he failed to fulfill, thus keeping the dredge idle. It appears, however, that the dipper of the dredge was out of order, and had to be repaired, and that, as soon as it was ready, the respondent put the fireman in charge. It becomes unnecessary, therefore, to express an opinion upon a claim thus set up, and whether it could be allowed as a counterclaim. It appears, however, that the libel was filed under these circumstances, and without notice. This will affect the costs.

The question whether the lien exists, although the libelant knew that respondent was only lessee of the dredge, has not been discussed, as it was not pressed in argument. The point is settled in The International, 30 Fed. Rep. 375. Judge Brown, of the southern district of New York, in that case discusses the question, and sustains the lien of an engineer upon a chartered ship, although he was engaged with full knowledge of the charter party and by the charterer. Counsel, at the hearing, agreed that the unpaid wages were $416. Let a decree go for this sum to libelant, but, for the reasons above intimated, without costs to him.