### FARRELL v. WATERMAN S. S. CO. et al.

(District Court, S. D. Alabama.  July 24, 1923.)

No. 1956.

**1. Courts ⬤⇒255—All federal courts derive their jurisdiction directly from the Constitution.**

Under the provision of Const. art. 3, § 1, that "the judicial power of the United States shall be vested in one Supreme Court, and in such inferior courts as the Congress may from time to time ordain and establish," such inferior courts, when ordained and established, no less than the Supreme Court, derive their jurisdiction directly from the Constitution, though that jurisdiction may be distributed between them in the discretion of Congress.

**2. Admiralty ⬤⇒1—Constitutional law ⬤⇒56—Congress is without power to limit jurisdiction of admiralty courts.**

Const. art. 3, § 2, having extended the judicial power of the United States to "all" cases of admiralty and maritime jurisdiction, it is not within the power of Congress to limit the powers of the admiralty courts by excluding from their jurisdiction certain cases within the admiralty and maritime jurisdiction, and conferring such jurisdiction on the state courts.

In Admiralty.  Suit by Phillip T. Farrell against the Waterman Steamship Company and others.  On exceptions to libel.  Overruled. For prior opinion, see 286 Fed. 284.

Jesse F. Hogan, of Mobile, Ala., for libelant.

Aubrey Boyles, U. S. Atty., and Pillans, Cowley & Gresham, all of Mobile, Ala., for the United States and Shipping Board Emergency Fleet Corporation.

Smiths, Young, Leigh & Johnston, of Mobile, Ala., for Ryan Stevedoring Co.

Pillans, Cowley & Gresham, of Mobile, Ala., for Waterman S. S. Corporation.

ERVIN, District Judge.  [1] Since writing the opinion reported in 286 Fed. 284, I have concluded to elaborate more fully the questions there discussed.  It has been said:

"Only the jurisdiction of the Supreme Court is derived directly from the Constitution.  Every other court created by the general government derives its jurisdiction wholly from the authority of Congress.  That body may give, withhold, or restrict such jurisdiction at its discretion, provided it be not extended beyond the boundaries fixed by the Constitution."  Kline v. Burke Const. Co., 260 U. S. 226, 43 Sup. Ct. 79, 67 L. Ed. ——.

Other cases have expressed the same idea.  I hesitate to criticize an expression used by this court, but when it is in my opinion incorrect, and also dictum, and in addition is in conflict with other decisions of the same court, I am relieved to some extent of my embarrassment.

The above language was unnecessary to the decision and entirely too broad.  A suit was brought in the federal court by the Burke Construction Company.  Defendant filed a bill against the Burke Company in a state court, and then Burke Company filed a bill as dependent

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

to its action at law in the federal court, to enjoin the prosecution of the suit in the state court. Each party claimed the other was indebted to it on the same contract. The right of Burke Company to enjoin defendant from prosecuting its suit in the state court depended on whether the federal court had exclusive jurisdiction of a controversy between citizens of different states when a suit has been begun in the federal court.

There was no denial of the jurisdiction of the federal court; the only question was as to whether such jurisdiction was exclusive. In Stevenson v. Fain, 195 U. S. 167, 25 Sup. Ct. 6, 49 L. Ed. 142, one of the cases cited in the Kline Case, it is said:

"The use of the word 'controversies,' as in contradistinction to the word 'cases,' and the omission of the word 'all' in respect of controversies, left it to Congress to define the controversies over which the courts it was empowered to ordain and establish might exercise jurisdiction, and the manner in which it was to be done."

This ruling certainly means that it was the omission of the word "all" as to controversies, which "left it to Congress to define the 'controversies' over which the courts it was empowered to ordain and establish might exercise jurisdiction," etc., for, if the power comes from the substitution of the word "controversies" for "cases" and the omission of the word "all," then when that word is used no such power would exist. What, then, deprived Congress of this power? It must have been one of two things: Either, first, the vesting by the Constitution of this power in the courts; or, second, the failure of the Constitution to include this power among those granted to the federal government, and we know it was not the latter.

While Judge Fuller does not mention in the Stevenson Case the opinion of Judge Story in Martin v. Hunter, 1 Wheat. 304, 4 L. Ed. 97, we know he must have had it in mind, for the same distinction was there drawn in the following words, beginning on page 327 to 337 of 1 Wheat. (4 L. Ed. 97):

"The third article of the Constitution is that which must principally attract our attention. The first section declares: 'The judicial power of the United States shall be vested in one Supreme Court, and in such other inferior courts as the Congress may, from time to time, ordain and establish.' The second section declares that 'the judicial power shall extend to all cases in law or equity, arising under this Constitution, the laws of the United States, and the treaties made, or which shall be made, under their authority; to all cases affecting ambassadors, other public ministers and consuls; to all cases of admiralty and maritime jurisdiction; to controversies to which the United States shall be a party, to controversies between two or more states; between a state and citizens of another state; between citizens of different states; between citizens of the same state, claiming lands under the grants of different states; and between a state, or the citizens thereof, and foreign states, citizens, or subjects.' It then proceeds to declare that 'in all cases affecting ambassadors, other public ministers and consuls, and those in which a state shall be a party, the Supreme Court shall have original jurisdiction. In all other cases before mentioned the Supreme Court shall have appellate jurisdiction, both as to law and fact, with such exceptions, and under such regulations, as the Congress shall make. Such is the language of the article creating and defining the judicial power of the United States. It is the voice of the whole American people, solemnly declared, in establishing one great department of that government, which was in many respects

national, and in all supreme." It is a part of the very same instrument which was to act, not merely upon individuals, but upon states, and to deprive them altogether of the exercise of some powers of sovereignty, and to restrain and regulate them in the exercise of others.

"Let this article be carefully weighed and considered. The language of the article throughout is manifestly designed to be mandatory upon the Legislature. Its obligatory force is so imperative, that Congress could not, without a violation of its duty, have refused to carry it into operation. The judicial power of the United States *shall* be vested (not *may* be vested) in one Supreme Court, and in such inferior courts as Congress may, from time to time, ordain and establish. Could Congress have lawfully refused to create a Supreme Court, or to vest in it the constitutional jurisdiction? 'The judges, both of the Supreme and inferior courts, shall hold their offices during good behavior, and shall, at stated times, receive, for their services, a compensation which shall not be diminished during their continuance in office.' Could Congress create or limit any other tenure of the judicial office? Could they refuse to pay at stated times, the stipulated salary, or diminish it during the continuance in office? But one answer can be given to these questions: It must be in the negative. The object of the Constitution was to establish three great departments of government, the legislative, the executive, and the judicial departments. The first was to pass laws, the second to approve and execute them, and the third to expound and enforce them. Without the latter, it would be impossible to carry into effect some of the express provisions of the Constitution. How, otherwise, could crimes against the United States be tried and punished? How could causes between two states be heard and determined? The judicial power must therefore be vested in some court by Congress; and to suppose that it was not an obligation binding on them, but might, at their pleasure, be omitted or declined, is to suppose that, under the sanction of the Constitution, they might defeat the Constitution itself. A construction which would lead to such a result cannot be sound.

"The same expression, 'shall be vested,' occurs in other parts of the Constitution, in defining the powers of the other co-ordinate branches of the government. The first article declares that 'all legislative powers herein granted shall be vested in a Congress of the United States.' Will it be contended that the legislative power is not absolutely vested? That the words merely refer to some future act, and mean only that the legislative power may hereafter be vested? The second article declares that 'the executive power shall be vested in a President of the United States of America.' Could Congress vest it in any other person, or is it to await their good pleasure, whether it is to vest at all? It is apparent that such a construction, in either case, would be utterly inadmissible. Why, then, is it entitled to a better support in reference to the judicial department? If, then, it is a duty of Congress to vest the judicial power of the United States, it is a duty to vest the whole judicial power. The language, if imperative as to one part, is imperative as to all. If it were otherwise, this anomaly would exist: That Congress might successively refuse to vest the jurisdiction in any one class of cases enumerated in the Constitution, and thereby defeat the jurisdiction as to all; for the Constitution has not singled out any class on which Congress are bound to act in preference to others.

"The next consideration is as to the courts in which the judicial power shall be vested. It is manifest that a Supreme Court must be established; but whether it be equally obligatory to establish inferior courts is a question of some difficulty. If Congress may lawfully omit to establish inferior courts, it might follow that in some of the enumerated cases the judicial power could nowhere exist. The Supreme Court can have original jurisdiction in two classes of cases only, viz. in cases affecting ambassadors, other public ministers and consuls, and in cases in which a state is a party. Congress cannot vest any portion of the judicial power of the United States, except in courts ordained and established by itself; and if in any of the cases enumerated in the Constitution the state courts did not then possess jurisdiction, the appellate jurisdiction of the Supreme Court (admitting that it could act on state courts) could not reach those cases, and, consequently, the injunction

of the Constitution, that the judicial power 'shall be vested,' would be disobeyed. It would seem, therefore, to follow that Congress are bound to cre-. ate some inferior courts, in which to vest all that jurisdiction which, under the Constitution, is exclusively vested in the United States, and of which the supreme court cannot take original cognizance. They might establish one or more inferior courts; they might parcel out the jurisdiction among such courts, from time to time, at their own pleasure. But the whole judicial power of the United States should be at all times vested, either in an original or appellate form, in some courts created under its authority.

"This construction will be fortified by an attentive examination of the second section of the third article. The words are, 'The judicial power shall extend,' etc.. Much minute and elaborate criticism has been employed upon these words. It has been argued that they are equivalent to the words 'may extend,' and that 'extend' means to widen to new cases not before within the scope of the power. For the reasons which have been already stated, we are of opinion that the words are used in an imperative sense. They import an absolute grant of judicial power. They cannot have a relative signification applicable to powers already granted; for the American people had not made any previous grant. The Constitution was for a new government, organized with new substantive powers, and not a mere supplementary charter to a government already existing. The Confederation was a compact between states, and its structure and powers were wholly unlike those of the national government. The Constitution was an act of the people of the United States to supersede the Confederation, and not to be ingrafted on it, as a stock through which it was to receive life and nourishment.

"If, indeed, the relative signification could be fixed upon the term 'extend,' it could not (as we shall hereafter see) subserve the purposes of the argument in support of which it has been adduced. This imperative sense of the words 'shall extend' is strengthened by the context. It is declared that 'in all cases affecting ambassadors,' etc., 'the Supreme Court shall have original jurisdiction.' Could Congress withhold original jurisdiction in these cases from the Supreme Court? The clause proceeds: 'In all the other cases before mentioned the Supreme Court shall have appellate jurisdiction, both as to law and fact, with such exceptions, and under such regulations, as the Congress shall make.' The very exception here shows that the framers of the Constitution used the words in an imperative sense. What necessity could there exist for this exception, if the preceding words were not used in that sense? Without such exception, Congress would, by the preceding words, have possessed a complete power to regulate the appellate jurisdiction, if the language were only equivalent to the words 'may have' appellate jurisdiction. It is apparent, then, that the exception was intended as a limitation upon the preceding words, to enable Congress to regulate and restrain the appellate power, as the public interests might from time to time require.

"Other clauses in the Constitution might be brought in aid of this construction; but a minute examination of them cannot be necessary, and would occupy too much time. It will be found that, whenever a particular object is to be effected, the language of the Constitution is always imperative, and cannot be disregarded, without violating the first principles of public duty. On the other hand, the legislative powers are given in language which implies discretion, as from the nature of legislative power such a discretion must ever be exercised. It being, then, established that the language of this clause is imperative, the next question is as to the cases to which it shall apply. The answer is found in the Constitution itself. The judicial power shall extend to all the cases enumerated in the Constitution. As the mode is not limited, it may extend to all such cases, in any form, in which judicial power may be exercised. It may therefore extent to them in the shape of original or appellate jurisdiction, or both: for there is nothing in the nature of the cases which binds to the exercise of the one in preference to the other.

"In what cases (if any) is this judicial power exclusive, or exclusive at the election of Congress? It will be observed that there are two classes of cases enumerated in the Constitution, between which a distinction seems to be drawn. The first class includes cases arising under the Constitution, laws,

and treaties of the United States, cases affecting ambassadors, other public ministers and consuls, and cases of admiralty and maritime jurisdiction. In this class the expression is, 'and that the judicial power shall extend to all cases;' but in the subsequent part of the clause, which embraces all the other cases of national cognizance, and forms the second class, the word 'all' is dropped, seemingly ex industria. Here the judicial authority is to extend to controversies (not to all controversies) to which the United States shall be a party, etc. From this difference of phraseology, perhaps, a difference of constitutional intention may, with propriety, be inferred. It is hardly to be presumed that the variation in the language could have been accidental. It must have been the result of some determinate reason; and it is not very difficult to find a reason sufficient to support the apparent change of intention. In respect to the first class it may well have been the intention of the framers of the Constitution imperatively to extend the judicial power, either in an original or appellate form, to *all* cases, and in the latter class to leave it to Congress to qualify the jurisdiction, original or appellate, in such manner as public policy might dictate.

"The vital importance of all the cases enumerated in the first class to the national sovereignty, might warrant such a distinction. In the first place, as to cases arising under the Constitution, laws, and treaties of the United States. Here the state courts could not originally possess a direct jurisdiction. The jurisdiction over such cases could not exist in the state courts previous to the adoption of the Constitution, and it could not afterwards be directly conferred on them; for the Constitution expressly requires the judicial power to be vested in courts ordained and established by the United States. This class of cases would embrace civil as well as criminal jurisdiction, and affect, not only our internal policy, but our foreign relations. It would therefore be perilous to restrain it in any manner whatsoever, inasmuch as it might hazard the national safety. The same remarks may be urged as to cases affecting ambassadors, other public ministers, and consuls, who are emphatically placed under the guardianship of the law of nations; and as to cases of admiralty and maritime jurisdiction, the admiralty jurisdiction embraces all questions of prize and salvage, in the correct adjudication of which foreign nations are deeply interested. It embraces also maritime torts, contracts, and offenses, in which the principles of the law and comity of nations often form an essential inquiry. All these cases, then, enter into the national policy, affect the national rights, and may compromit the national sovereignty. The original or appellate jurisdiction ought not, therefore, to be restrained, but should be commensurate with the mischiefs intended to be remedied, and, of course, should extend to all cases whatsoever.

"A different policy might well be adopted in reference to the second class of cases; for although it might be fit that the judicial power should extend to all controversies to which the United States should be a party, yet this power might not have been imperatively given, least it should imply a right to take cognizance of original suits brought against the United States as defendants in their own courts. It might not have been deemed proper to submit the sovereignty of the United States, against their own will, to judicial cognizance, either to enforce rights or to prevent wrongs; and as to the other cases of the second class, they might well be left to be exercised under the exceptions and regulations which Congress might, in their wisdom, choose to apply. It is also worthy of remark that Congress seem, in a good degree, in the establishment of the present judicial system, to have adopted this distinction. In the first class of cases, the jurisdiction is not limited, except by the subject-matter; in the second, it is made materially to depend upon the value in controversy.

"We do not, however, profess to place any implicit reliance upon the distinction which has here been stated and endeavored to be illustrated. It has the rather been brought into view in deference to the legislative opinion, which has so long acted upon and enforced, this distinction. But there is, certainly, vast weight in the argument, which has been urged, that the Constitution is imperative upon Congress to vest all the judicial power of the United States, in the shape of original jurisdiction, in the Supreme and in-

ferior courts created under its own authority. At all events, whether the one construction or the other prevail, it is manifest that the judicial power of the United States is, unavoidably in some cases exclusive of all state authority, and in all others may be made so at the election of Congress. No part of the criminal jurisdiction of the United States can, consistently with the Constitution, be delegated to state tribunals. The admiralty and maritime jurisdiction is of the same exclusive cognizance; and it can only be in those cases where, previous to the Constitution, state tribunals possessed jurisdiction, independent of national authority, that they can now constitutionally exercise a concurrent jurisdiction. Congress, throughout the Judiciary Act, and particularly in the ninth, eleventh and thirteenth sections, have legislated upon the supposition that, in all the cases to which the judicial powers of the United States extended, they might rightfully vest exclusive jurisdiction in their own courts."

I have quoted at such length from this great case because of the exhaustive character of the reasoning therein found and the conclusions drawn. While Judge Story does not directly consider the question as to whether the inferior courts that may be created derive their jurisdiction from the Constitution or from the act creating them, the reasoning supports the former idea.

Should it be conceded, however, that Congress has the right to limit the subjects of the court's jurisdiction in those subjects referred to as "controversies," where the word "all" is not used, still this does not mean that such jurisdiction as by the act passes to the court does not come from, or is not vested by, the Constitution, and not by the act. For, as the Stevenson Case holds:

"The omission of the word 'all,' in respect to controversies, left it 'to Congress to define the controversies over which the courts it was empowered to ordain and establish might exercise jurisdiction, and the manner in which it was to be done.'"

If the Supreme Court has its jurisdiction vested directly in it by the language of the Constitution, then it was done in section 1, art. 3, where it was said:

"The judicial power of the United States shall be vested in one Supreme Court, and in such inferior courts as the Congress may from time to time ordain and establish."

So that the same sentence also vests in such inferior courts as may be established their respective portion of the "judicial power" as is vested in the Supreme Court. The same words in the same sentence vest the judicial power in both or in neither. The mere fact that one is referred to by name while the others are referred to as a class can make no difference. It is certain that the Constitution draws no more distinction between them as courts than it does as judges by the latter part of the section:

"The judges, both of the Supreme and inferior courts, shall hold their offices during good behavior, and shall, at stated times, receive for their services, a compensation, which shall not be diminished during their continuance in office."

The Constitution, it is true, names the "one Supreme Court," while it only refers to the "inferior courts"; but it no more creates the "one Supreme Court" it names than it does the "inferior courts" it refers to. The language is:

291 F.—39

"The judicial power of the United States *shall be vested in* one Supreme Court and such inferior courts *as the Congress may from time to time ordain and establish.*" (Italics mine.)

The mandate was here given to the Congress to ordain and establish one Supreme Court and such inferior courts as were found necessary to exercise the judicial power of the United States, and when these respective courts should be ordained and established they were invested by the Constitution with this judicial power. The fact that the "one Supreme Court" must be ordained and established by the Congress before it could be invested with the powers granted by the Constitution, just as the inferior courts must be, makes it manifest that the Constitution draws no distinction between these respective courts when it comes to investing them with the judicial power.

None of the federal courts are named, except the one Supreme Court, but the constitutional grant of power to the inferior courts is contained in the same words and the same sentence as that to the Supreme Court. The language is:

"The judicial power of the United States shall be vested in one Supreme Court and in such inferior courts as the Congress may from time to time ordain and establish."

The fact that there can be only one Supreme Court, while there may be many inferior courts, can make no difference. When these inferior courts are created by Congress, it can name them as it chooses, and it can also divide this constitutional power among them as it sees fit; but the power of the inferior courts as a class is granted by the Constitution, as much as it is granted to the Supreme Court, for the same words contain the grant to each and to both: The judicial power is "vested in one Supreme Court *and* such inferior courts," etc.

The conjunction "and" couples the inferior courts with the Supreme Court in the grant of power, and the inferior courts, when created, are as much the recipients of the constitutional grant of the judicial power as the Supreme Court. As said by Judge Story, the language used is mandatory. It is just as mandatory in referring to the inferior courts as it is to the Supreme Court. It says the inferior courts, when created, "shall be vested." This means a vesting by the Constitution, and not by Congress.

When Congress has created a court, and declared with what portion of the constitutional power it shall be vested, the power comes, not from the congressional act, but from the Constitution. Congress merely creates the courts and divides or distributes the constitutional powers among them. Should I give $1,000, and empower A. to distribute it among such individuals of a given class as he may see fit, the distributees named by A. would take from me, and not from A., who was merely empowered to make the distribution.

Had the language been, "Congress may from time to time ordain and establish courts and vest them with judicial power," a very different question would have been presented. In a sense the inferior courts get their power from Congress, for the act specifies what portion of the constitutional power shall be vested in it. This, no doubt, caused the confusion.

[2] As to the class of "controversies" referred to in the Constitution, where exclusive powers are not given, we may concede that Congress might leave a concurrent jurisdiction in the state courts, and might restrict and qualify that of the federal courts; but when Congress created a court, and declared it should have charge of the subjects as to which exclusive jurisdiction is given by the Constitution, such as "to all cases of admiralty and maritime jurisdiction" (article 3, § 2,) then Congress has no more power to lessen the jurisdiction so conferred by the Constitution than it has to increase it. It would have as much power to give a portion of this power to a state court as it would to increase or diminish the power of the federal court.

If the Supreme Court gets jurisdiction of "all cases of admiralty and maritime jurisdiction" from the Constitution, how can it be done, except by first vesting this jurisdiction in some inferior court, for it is manifest that the Supreme Court has no original jurisdiction in admiralty and maritime matters. So, if Congress should decline to vest this jurisdiction in a federal court, the Supreme Court would fail to get this jurisdiction. Or should Congress, after vesting it in some inferior court, withdraw it from such court and refuse to create another court to take it, or to transfer it to some other court already created, then the Congress would take away from the Supreme Court, as well as the inferior court, jurisdiction now vested in it, which according to the statement I am criticizing the Supreme Court got from the Constitution.

If the Supreme Court gets its jurisdiction from the Constitution, then it must get all the judicial power created by the Constitution. Some of it is conferred as original, while the balance is appellate. Can Congress any more deprive it of its appellate than it can of its original jurisdiction? The Constitution divides the functions of government into these independent departments, the executive, the legislative, and the judicial, giving to each its respective functions.

We might as well say that the legislative powers were not conferred on Congress by the Constitution as to say that the judicial powers were not conferred or vested in the judiciary by the Constitution itself. If the courts were to take only so much power as Congress might grant, then the courts cease to be an independent constitutional part of the government and become a dependency of the Congress.

The rulings in Knickerbocker v. Stewart, 253 U. S. 155, 40 Sup. Ct. 438, 64 L. Ed. 834, 11 A. L. R. 1145, and Southern Pacific Co. v. Jensen, 244 U. S. 205, 37 Sup. Ct. 524, 61 L. Ed. 1086, L. R. A. 1918C, 451, Ann. Cas. 1917E, 900, were based on this constitutional section granting exclusive admiralty and maritime jurisdiction. An analysis of these cases and the reasons underlying them brings them in conflict with what is said in the Kline Case; for, if Congress can give to the federal courts such jurisdiction as it sees fit and take it away, free from any controlling influence of the Constitution, then those cases are wrong. If it can "give, withhold or restrict such jurisdiction at its discretion, provided it be not extended beyond the boundaries fixed by the Constitution," then those cases should be reversed.

This language concedes Congress cannot exceed the constitutional

limitation. If the wording of the Constitution puts an implied limitation on the power of Congress, not to exceed, does not the express language so used also put a limitation as to what it cannot deny to the courts? The powers of Congress are conferred by section 8, article 1, of the Constitution:

"The Congress shall have power: * * * To constitute tribunals inferior to the Supreme Court."

Remembering that the federal government is one of limited powers as to each of its three branches and that neither of these branches, the executive, the legislative, and the judicial, have any powers beyond those granted by the Constitution, I ask where the Congress gets its power to confer jurisdiction upon the courts it is empowered to create? The power here given it is to constitute the courts, not to confer jurisdiction on them. The makers of the Constitution were fully aware, when this power was granted to Congress, that they were providing in article 3 for the powers the courts should have, and vesting the courts with such jurisdiction as the Constitution makers deemed such courts should have.

If the Congress can confer such jurisdiction as it sees fit upon the courts it creates, it must be conceded they cannot go beyond the constitutional grant of power to the courts, and it seems very odd that the makers of the Constitution, instead of conferring the power upon the Congress to confer this jurisdiction, put the jurisdiction and powers of the courts in article 3 of the Constitution, which is devoted to the courts. Certainly, if they were intending to authorize the Congress to confer the jurisdiction, instead of themselves doing it, some such intimation would have been found in that part of the Constitution which they devoted to the powers of the Congress.

When exclusive jurisdiction is given by the Constitution, the Congress cannot limit or restrict this jurisdiction. This is what I understand to be the holding in the Martin and Stevenson Cases, supra, and the necessary result of the Knickerbocker and Jensen Cases, supra. In Cowles v. Mercer County, 7 Wall. 118, 19 L. Ed. 86, it is said:

"The power to contract with citizens of other states implies liability to suit by citizens of other states, and no statute limitation of suability can defeat the jurisdiction given by the Constitution."

See Lincoln Co. v. Luning, 133 U. S. 531, 10 Sup. Ct. 364, 33 L. Ed. 766.

· None of the cases I have examined, where the Supreme Court has said its jurisdiction was derived directly from the Constitution, but that of the inferior courts was from the Congress, involved a case where the word "all" was used in the constitutional grant.