## THE MERCEDES DE LARRINAGA.

(District Court, D. Massachusetts.   October 3, 1923.)

### No. 2349.

Admiralty ⬤⟾20—Constitutional law ⬤⟾56—Act making remedy under state law exclusive in maritime cases held unconstitutional, as limiting jurisdiction of courts.

 Act June 10, 1922, amending Judicial Code, § 24 (3), by providing that rights and remedies given by state Workmen's Compensation Laws for injury or death of persons other than seamen, shall be exclusive, is unconstitutional in so far as it attempts to exclude from the federal courts causes of maritime jurisdiction.

In Admiralty.   Suit by Harry Miller against the steamer Mercedes de Larrinaga.   On exception to libel.   Overruled.

Julian C. Woodman, of Boston, Mass., for plaintiff.
Arthur J. Santry, of Boston, Mass., for defendant.

LOWELL, District Judge. This was a libel brought against the steamer Mercedes de Larrinaga for injuries sustained by a longshoreman who was in the employ of the Boston Stevedore Company at work on the vessel.

Larrinaga & Co., Limited, claimant of the vessel, filed an exception to the libel, setting forth that Miller was employed by the Boston Stevedore Company, which had provided by insurance under the Workmen's Compensation Act of Massachusetts (G. L. c. 152) for the payment to its employees of compensation for injuries arising out of and in the course of their employment, and that therefore under the Act of Congress of June 10, 1922 (42 Stat. 634), amending sections 24 and 256 of the Judicial Code, the District Court has no jurisdiction over the cause of action.

There is no doubt that, unless the court is deprived of its jurisdiction by the Act of June 10, 1922, it has power to entertain this libel. Atlantic Transport Co. v. Imbrovek, 234 U. S. 52, 34 Sup. Ct. 733, 58 L. Ed. 1208; The City of Norwalk (D. C.) 55 Fed. 98. The statute involved in this case was passed by Congress to cure the unconstitutionality of the Act of October 6, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 991 [3], 1233), which was held void in Knickerbocker Ice Co. v. Stewart, 253 U. S. 149, 40 Sup. Ct. 438, 64 L. Ed. 834, 11 A. L. R. 1145. That statute was enacted in consequence of Southern Pacific Co. v. Jensen, 244 U. S. 205, 37 Sup. Ct. 524, 61 L. Ed. 1086, L. R. A. 1918C, 451, Ann. Cas. 1917E, 900, which held that the Workmen's Compensation Laws of New York (Consol. Laws, c. 67) could have no effect on an injury which happened on shipboard. The Knickerbocker Case is only one of many recent decisions of the Supreme Court on maritime affairs, in all of which the opinions are written by Mr. Justice McReynolds. The Jensen Case, above cited, was the first. It was decided in 1917, and on the same day Clyde S. S. Co. v. Walker, 244 U. S. 255, 37 Sup. Ct. 545, 61 L. Ed. 1116, was handed down with a short opinion, referring to the Jensen Case. Then came Chelentis v. Luckenbach Steamship Co., 247 U. S. 372, 38 Sup. Ct. 501, 62 L. Ed. 1171, in 1918, which held that a seaman could not recover at common law for injuries by negligence on the high seas. In 1919 the case of Union Fish Co. v. Erickson, 248 U. S. 308, 39 Sup. Ct. 112, 63 L. Ed. 261, held that a contract of employment of the master of a vessel was governed by the maritime law and not by the law of a state. Next in order, in 1920, was the Knickerbocker Case, above cited; then came the case of Western Fuel Co. v. Garcia, 257 U. S. 233, 42 Sup. Ct. 89, 66 L. Ed. 210, where the court allowed jurisdiction in admiralty in personam by an administratrix under a California statute for the death by negligence of a longshoreman on shipboard, though it decided that the time limit of the statute barred the action. In January, 1922, the court in Grant-Smith-Porter Ship Co. v. Rohde, 257 U. S. 469, 42 Sup. Ct. 157, 66 L. Ed. 321, 25 A. L. R. 1008, refused to entertain a libel in personam for personal injuries happening to a carpenter on a vessel after she was launched, on the ground that the Oregon Workmen's Compensation Act gave compensation and was exclusive. In May, 1922, in the case of State Industrial Commission v. Nordenholt

Corp., 259 U. S. 263, 42 Sup. Ct. 473, 66 L. Ed. 933, 25 A. L. R. 1013, the court held that the New York Workmen's Compensation Act covered the case of an injury to a longshoreman on a dock. There were four dissenting Justices in the Jensen and Knickerbocker Cases. In the first case Mr. Justice Holmes and Mr. Justice Pitney each delivered a dissenting opinion, and Mr. Justice Brandeis and Mr. Justice Clarke concurred. In the Knickerbocker Case Mr. Justice Holmes delivered a dissenting opinion, and the three other Justices concurred. For a very able review of the cases above cited, see a learned article by John G. Palfrey, Esq., of the Boston bar, in the Harvard Law Review for May, 1923, entitled "The Common-Law Courts and the Law of the Sea," 36 Harv. L. Rev. 777. Finally, in the case of Great Lakes Dredge & Dock Co. v. Kierejewski, 261 U. S. 479, 43 Sup. Ct. 418, 67 L. Ed. 756, the Supreme Court in April, 1923, held that the District Court sitting in admiralty has jurisdiction over the death of a boilermaker at work on a scow, the death being due to the negligence of his employer in allowing the water near the scow to be made so rough by his tugboats that the boilermaker fell off a float on which he was standing at work and was drowned.

These decisions have laid down two rules of law, with the first of which only are we concerned in this case. The first is that it is incompetent for the states, even though authorized by congressional legislation, to interfere with the uniformity of the maritime law. In addition to the cases above cited see Osaka Shosen Kaisha v. Pacific Export Lumber Co., 260 U. S. 490, 43 Sup. Ct. 172, 67 L. Ed. 364. The second rule is that, in those cases where common-law courts have jurisdiction over maritime affairs, the trials are to be governed, not by the common-law rules, but by the rules of admiralty. In addition to the cases above cited, see, also, Carlisle Packing Co. v. Sandanger, 259 U. S. 255, 42 Sup. Ct. 475, 66 L. Ed. 927.

It is perhaps a little difficult to see on what principle an action for death under a state statute may be allowed in the admiralty (Garcia Case), while compensation cannot be given for injuries or death by the state Compensation Laws (Jensen Case). See the dissenting opinion of Mr. Justice Holmes in Southern Pacific Co. v. Jensen, 244 U. S. 205, 219, 37 Sup. Ct. 524, 61 L. Ed. 1086, L. R. A. 1918C, 451, Ann. Cas. 1917E, 900. However, the Supreme Court has made this distinction. The reason for allowing the recovery for death was probably because the court hesitated to overrule the line of cases of which The Hamilton, 207 U. S. 398, 28 Sup. Ct. 133, 52 L. Ed. 264, is the leading one. Perhaps the opinions in the Jensen and Knickerbocker Cases were somewhat influenced by the fact that the court did not view the new idea of workmen's compensation with much favor. Palfrey, op. cit. p. 796. The circumstance also that actions for death would be comparatively rare, while compensation for injuries or death would be very frequent, may have helped to lead to the decision by the court that the first would not unduly interfere with the requisite uniformity of the maritime law, while the latter did so interfere. These decisions, especially as to the second rule above stated, have been severely criticized by members of the admiralty bar. "Is Every County Court in

the United States a Court of Admiralty?" 53 Am. L. Rev. 749, and "The Tables Turned—Lord Coke Demolished," 55 Am. L. Rev. 685, by Frederick Cunningham, Esq.; "Recent Problems in Admiralty Jurisdiction," John Hopkins University Studies, Series 40, No. 3, by Edgar T. Fell, Esq. Mr. Palfrey, in the article already cited, says of the first rule:

> "Aside from questions of the scope of the maritime law itself, the uniformity rule as a test of the validity of state legislation will require much discussion in its application.. While perhaps a somewhat daring piece of judicial legislation, the rule is based on the requirements of a sound public policy, is supported by thoroughly tenable views of constitutional law, and is capable of application with the aid of well-settled analogies, even though these analogies are not perfect."

The results of the decisions, so far as they relate to the case at bar, may be stated as follows: The Workmen's Compensation Act of a state cannot apply to an injury happening on shipboard (Jensen Case), even with the authorization of Congress (Knickerbocker Case), unless the work being done is not of a maritime nature (Rohde Case). Such laws may apply to an injury happening on a dock, although the work done be of a maritime nature (Nordenholt Case). The last case is an instance of the law long settled that in maritime torts locality is the test of jurisdiction. The Sarah Jane, 1 Lowell, 203, Fed. Cas. No. 12,349; Hughes v. Alaska S. S. Co. (D. C.) 287 Fed. 427; Hughes, Admiralty (2d Ed.) 195. The Rohde Case is an instance of the law that in contracts relating to ships the test is whether the subject-matter of the contract is maritime or not. The Sarah Jane, 1 Lowell, 203, Fed. Cas. No. 12,349; Hughes, Admiralty (2d Ed.) 19.

It will be noticed that the Supreme Court has not determined whether the remedy under Workmen's Compensation Acts sounds in tort or contract, since in the Nordenholt Case it treated the matter as arising under the rule above stated as to maritime torts, while in the Rohde Case the law which the court applied was that of maritime contract. However, in the Nordenholt Case the court says:

> "Insana was injured upon the dock, an extension of the land (Cleveland Terminal & Valley R. R. Co. v. Cleveland S. S. Co., 208 U. S. 316), and certainly prior to the Workmen's Compensation Act the employer's liability for damages would have depended upon the common law and the state statutes. Consequently, when the Compensation Act superseded other state laws touching the liability in question, it did not come into conflict with any superior maritime law. And this is true, whether awards under the act are made as upon implied agreements or otherwise. The stevedore's contract of employment did not contemplate any dominant federal rule concerning the master's liability for personal injuries received on land. In Jensen's Case, rights and liabilities were definitely fixed by maritime rules, whose uniformity was essential. With these the local law came into conflict. Here no such antagonism exists. There is no pertinent federal statute, and application of the local law will not work material prejudice to any characteristic feature of the general maritime law." 259 U. S. 275, 276, 42 Sup. Ct. 473, 475 (66 L. Ed. 933, 25 A. L. R. 1013).

As has been already stated, an act of Congress saving to persons their rights under the Workmen's Compensation Act of a state has been held unconstitutional in Knickerbocker Ice Co. v. Stewart, 253 U. S. 149, 40 Sup. Ct. 438, 64 L. Ed. 834, 11 A. L. R. 1145. The present act is

much more limited. It was passed by Congress with an especial view to injuries to longshoremen. Cong. Record, vol. 62, pt. 8, pp. 7754, 7755.

The two acts are printed in the margin.[1] It will be noticed that a new provision has been introduced into the present act, taking away the jurisdiction of the District Court over cases where the Workmen's Compensation Acts of the state give compensation. The act of Congress with which we are concerned in this case has been upheld, without the citation of authority, by Judge Groner in the District Court for the Eastern District of Virginia. The Sorland, 1 Am. Maritime Cases, 158. It has been held unconstitutional in the District Court for the Southern District of Alabama by Judge Ervin. Farrel v. Waterman S. S. Co. (D. C.) 286 Fed. 284.

The passage cited from the Nordenholt Case, and others which might be added (see Southern Pacific Co. v. Jensen, 244 U. S. 205, 217, 37 Sup. Ct. 524, 61 L. Ed. 1086, L. R. A. 1918C, 451, Ann. Cas. 1917E,

---

[1] Act October 6, 1917, c. 97, 40 Stat. 395.

"That clause three of section twenty-four of the Judicial Code is hereby amended to read as follows:

" 'Third. Of all civil causes of admiralty and maritime jurisdiction, saving to to suitors in all cases the right of a common-law remedy where the common law is competent to give it, and to claimants the rights and remedies under the Workmen's Compensation Law of any state; of all seizures on land or waters not within admiralty and maritime jurisdiction; of all prizes brought into the United States; and of all proceedings for the condemnation of property taken as prize.'

"Sec. 2. That clause three of section two hundred and fifty-six of the Judicial Code is hereby amended to read as follows:

" 'Third. Of all civil causes of admiralty and maritime jurisdiction, saving to suitors in all cases the right of a common-law remedy where the common law is competent to give it, and to claimants the rights and remedies under the Workmen's Compensation Law of any state.' "

Act June 10, 1922, 42 Stat. 634:

"Clause 3 of section 24 of the Judicial Code is hereby amended to read as follows:

" 'Third. Of all civil causes of admiralty and maritime jurisdiction, saving to suitors in all cases the right of a common-law remedy where the common law is competent to give it, and to claimants for compensation for injuries to or death of persons other than the master or members of the crew of a vessel their rights and remedies under the Workmen's Compensation Law of any state, District, territory, or possession of the United States, which rights and remedies when conferred by such law shall be exclusive; of all seizures on land or waters not within admiralty and maritime jurisdiction; of all prizes brought into the United States; and of all proceedings for the condemnation of property taken as prize: Provided, that the jurisdiction of the District Courts shall not extend to causes arising out of injuries to or death of persons other than the master or members of the crew, for which compensation is provided by the Workmen's Compensation Law of any state, District, territory, or possession of the United States.' "

"Sec. 2. That clause 3 of section 256 of the Judicial Code is hereby amended to read as follows:

" 'Third. Of all civil causes of admiralty and maritime jurisdiction, saving to suitors in all cases the right of a common-law remedy where the common law is competent to give it and to claimants for compensation for injuries to or death of persons other than the master or members of the crew of a vessel, their rights and remedies under the Workmen's Compensation Law of any state, District, territory, or possession of the United States.' "

900. Knickerbocker Ice Co. v. Stewart, 253 U. S. 149, 160, 40 Sup. Ct. 438, 64 L. Ed. 834, 11 A. L. R. 1145), make it probable that the present act would be held void by the Supreme Curt. There is the additional element in this case that Congress has attempted to take away the jurisdiction of the District Court. Judge Ervin, in the Farrel Case, has given this as an additional reason for holding the act bad, and in this respect he seems clearly correct.

It is well known that one of the principal reasons for the calling of the Constitutional Convention of 1787 was the disturbed relations between the several states, owing to their conflicting laws relating to commerce. John Fiske, The Critical Period in Am. History, chap. IV; 4 Beveridge's Marshall, p. 422; Farrand, Records of the Federal Convention of 1787, vol. III, p. 547; Brown, The Commercial Power of Congress, p. 72; 2 Story, Const. (5th Ed.) § 1664; Webster, arguendo in Gibbons v. Ogden, 9 Wheat. 1, 11, 6 L. Ed. 23; Johnson, J., in the same case at page 224 of 9 Wheat. (6 L. Ed. 23). This situation gave rise to a request by Virginia and Maryland for a meeting at Annapolis. In August, 1786, this meeting took place, but as only five states were represented the delegates there, acting in excess of their instructions, advised that a general convention of all the states be held in Philadelphia in May, 1787. Farrand, The Framing of the Constitution, of the United States, p. 8. All the states but Rhode Island sent delegates (Farrand, op. cit. p. 11), though some of them arrived late, and the constitutional convention was held. There was no difference of opinion at any time over the necessity of giving Congress power over commerce, and the wide power granted by the Constitution was adopted without dissent. 4 Beveridge's Marshall, p. 423; Brown, op. cit. p. 74; Waring v. Clarke, 5 How. 454, 457, 12 L. Ed. 226. Such a power had been suggested as early as 1781 by way of an amendment of the Articles of Confederation, and the suggestion was frequently repeated before the convention assembled. Brown, op. cit. p. 133 et seq.

A clause giving power to Congress over commerce was contained in the Randolph draft (this is called by Mr. Farrand, op. cit. p. 70, the "Virginia Plan"), in the New Jersey plan and in Pinckney draft. Brown, op. cit. p. 124. These several drafts were referred by the convention to the committee on detail, and on August 6 they reported a draft of a constitution embodying, among many other things, a clause that Congress should have power "to regulate commerce with foreign nations and among the several states." Id. p. 122. This was adopted without dissent. Brown, op. cit. p. 126. Subsequently, on a suggestion of Madison, commerce with the Indian tribes was added, and the clause assumed the form in which it stands in the Constitutiona. Id. p. 127.

We have seen the importance of the regulation of commerce and the unanimity with which an extended power was given to Congress by the framers of the Constitution. The admiralty and maritime jurisdiction of the federal courts is closely bound up with the regulation of commerce, and it was the intention of the framers of the Constitution and of the public at large that this jurisdiction should be exclusively in the federal courts. United States v. New Bedford Bridge, 1 Woodb.

& M., 401, 443, 454, Fed. Cas. No. 15,867; City of Toledo (D. C.) 73 Fed. 220. That this was the common desire at the time is shown from the fact that after the Constitution went into effect the admiralty courts of the several states went out of existence. Waring v. Clarke, 5 How. 454, 457, 12 L. Ed. 226.

In colonial times admiralty and maritime jurisdiction was exercised by Vice Admiralty Courts. De Lovio v. Boit, 2 Gall. 398, Fed. Cas. No. 3,776; Washburn, Judicial History of Mass., p. 172; Benedict, Admiralty (4th Ed.) § 85 et seq. After the Declaration of Independence, many of the states appointed admiralty judges of their own; the only jurisdiction in admiralty given to the Congress by the Articles of Confederation being the power of "appointing courts for the trial of piracies and felonies committed on the high seas, and establishing courts for receiving and determining finally appeals in all cases of captures" (article IV; Farrand, Framing of the Constitution of the United States, p. 4), and the courts of admiralty of the states exercised a general admiralty jurisdiction. See Bee's Admiralty Report, Appendix, Waring v. Clarke, 5 How. 454, 455, 456, 12 L. Ed. 226; Benedict, op. cit. § 98. These courts all ceased functioning after the Constitution was adopted. Admiralty and maritime jurisdiction has been exercised by the federal courts exclusively ever since. Benedict, op. cit. § 139.

It seems clear from the history of the clause relating to commerce, and also the clause relating to admiralty jurisdiction, that the Congress exceeded its power in passing the Act of June 10, 1922. It is true that the Constitution does not require inferior federal courts to be established (Const. U. S. art. 3, § 1), and that their jurisdiction may be changed from time to time. (25 Corpus Juris, 690, and cases cited; Sheldon v. Sill, 8 How. 441, 12 L. Ed. 1147; Geiger v. Tacoma Ry. & Power Co. [C. C.] 141 Fed. 169).

But the history of the commerce clause and of the admiralty courts, together with the general acquiescence in the situation since 1787, shows that Congress has exceeded its power by trying to give to the states part of its admiralty jurisdiction. Martin v. Hunter's Lessee, 1 Wheat. 304, 330, 4 L. Ed. 97. It has always been held that the state courts have no jurisdiction in admiralty. Am. Ins. Co. v. Canter, 1 Pet. 511, 546, 7 L. Ed. 242; Rose, Federal Jurisdiction and Procedure (2d Ed.) § 130; The Moses Taylor, 4 Wall. 411, 18 L. Ed. 397. And see 3 Warren, The Supreme Court in United States History, p. 137.

A curious result of the statute, evidently not contemplated by Congress, would be that in cases where compensation was granted by a state all other remedies would be abolished. In the present case the remedy which the libelant seeks against the vessel is entirely independent of the Workmen's Compensation Act, and under section 15 of chapter 152 of the General Laws of Massachusetts the longshoreman may elect this remedy rather than the compensation provided by the act. As the case at bar is one where compensation is provided for the injuries of the longshoreman, the District Court would not have jurisdiction over the action against the vessel given by the maritime law because the act provides that:

"The jurisdiction of the District Courts shall not extend to causes arising out of injuries to or death of persons other than the master or members of the crew, for which compensation is provided by the Workmen's Compensation Law of any state."

I am of the opinion that under the decisions of the United States Supreme Court, and on account of the constitutional requirement that the jurisdiction of the federal courts in admiralty matters shall be exclusive, the statute is unconstitutional.

Exception to libel overruled.

NOTE.—Since writing the above, Judge Ervin has filed a supplementary opinion, published in 291 Fed. 604, and Judge James has held the act of Congress unconstitutional, in The Canadian Farmer, 290 Fed. 601.